FILED
IN CLERKS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS 2005 MAR -9 P 4: 20

U.S. DISTRICT COURT
DISTRICT OF MASS.

JOANNE M. ROYER, **05 CV 10448 GAO**
    Plaintiff        )
                      )

MAGISTRATE JUDGE Alexander

v.                       )

BLUE CROSS BLUE SHIELD      )
    OF MASSACHUSETTS, INC.,  )     **CIVIL ACTION NO:**
BLUE CROSS BLUE SHIELD      )
    OF MASSACHUSETTS, INC'S  )
OMNIBUS WELFARE BENEFIT PLAN,  )
KEMPER NATIONAL SERVICES, INC.,  )
BROADSPIRE SERVICES, INC.,     )
LYNN TONEY COLLINS,         )
BETH DANNA a/k/a            )
ELIZABETH A. DANNA,         )
TARA MORRIS a/k/a           )
ANDRENETTE MORRIS,         )
GUILLERMO RODRIGUEZ ,      )
JENNIFER FEENEY,           )
MARILYN L. RAMNARINE,      )
MAIDA POIRIER,             )
KATHY GRULLON-MCCARTH,    )
SHELDON MYERSON, MD.,      )
VAUGHN D. COHAN, MD.,      )
        Defendants        )

RECEIPT # _____
AMOUNT $ 250
SUMMONS ISSUED YES
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY CLK. TOM
DATE 3/10/05

**PLAINTIFF, JOANNE M. ROYER'S, COMPLAINT TO RECOVER ERISA
SHORT-TERM AND ERISA LONG-TERM DISABILITY BENEFITS;  FOR
PRELIMINARY INJUNCTION; A DE NOVO STANDARD OF REVIEW; HIPAA
RELIEF; SANCTIONS; AND MISCELLANEOUS RELIEF; AND
CLAIM FOR  TRIAL BY JURY**

---

## COMPLAINT

    1. This is an action arising under the Employee Retirement Income Security Act
of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"):

-2-

(a) to recover both short-term and long-term disability benefits due the Plaintiff under a Blue Cross Blue Shield of Massachusetts, Inc. employee benefit plan for the employees of Blue Cross Blue Shield of Massachusetts, Inc.;

(b) to redress breaches of administrator and fiduciary duties under ERISA;

(c) to recover statutory penalties caused by the Defendants' failure to provide full disclosure as requested and as required by ERISA;

(d) to seek a preliminary injunction ordering and requiring the Defendants to forthwith pay to the Plaintiff her short-term disability benefits from March 27, 2003 through July 1, 2003, at 100% of usual salary;

(e) to pay the Plaintiff's long-term disability benefits at 60% of usual salary from July 2, 2003 to the present, and for as long as the within litigation is pending, and for as long as the Plaintiff remains totally disabled from working or until she attains age 65 years whichever shall first occur;

(f) to recover costs of the within litigation, including attorney's fees and expenses as provided by ERISA;

(g) to recover prejudgment interest on the unpaid disability benefits due the Plaintiff at the rate of 12% per annum in accordance with the Radford Trust (D. Mass.) decision of Young, J., dated June 15, 2004;

(h) to have the court apply the "de novo," standard of review as opposed to the "arbitrary and capricious" standard;

(i) to award Plaintiff damages and sanctions against the Defendants jointly and severally for the violation and/or conspiracy to violate "HIPAA," i.e. to wit, Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat.1936 or the Gramm-Leach -Bliley Act ("GBL"), Publ. L.106-102, 1338 et seq. a/k/a Kennedy-Kasselbaum Act, as amended April-October, 2003; and for misconduct of participating in a scheme to wrongfully deny disability benefits so as to improve financial position of the Defendant Blue Cross and Blue Shield; and

(j) to grant the Plaintiff a Trial by Jury as to all of the foregoing.

## JURISDICTION AND VENUE

2. This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA, 29 U.S.C. § 1132(a), (e)(1) and (f). This court has subject matter jurisdiction pursuant to 29 U.S.C. 1132(e)(1) and 28 U.SD.C. § 1331. Under section 502(f) of ERISA, 29 U.S.C. §

-3-

1132(f), the court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3. Venue is properly in this district pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the subject employee benefit plan is administered in this district, the breaches of duty herein alleged occurred in this district, and one or more of the Defendants resides or is located in this district, and pursuant to 28 U.S.C. §1391(b), in that the causes of action arose in this district.

## PARTIES

4. The Plaintiff is JoAnne M. Royer (hereinafter called the "Plaintiff Royer") a 51 year old, totally disabled woman who resides at 76 Joseph Road, Braintree, County of Norfolk, Commonwealth of Massachusetts, 02184, who was a valued employee of the Defendant Blue Cross Blue Shield of Massachusetts, Inc. for 18 years from September, 1985 up until she became too sick to work shortly prior to and following her second but unsuccessful back surgery, as a result of which she was fired from her said position of 18 years by the Defendant BCBS, effective: September 29, 2003 because her physician-surgeon indicated she was too disabled to return to work. By not being able to return to work by September 29, 2003, she was discharged. Notwithstanding her discharge, she remains entitled to seek the remaining short-term disability benefits due but unpaid to her in the gross sum of $663.80 per week from March 27, 2003 up to July 1, 2003; as well as her long-term disability benefits in the gross sum of $ 1,606.31 per month from July 2, 2003 up to and including the present and until she attains age 65 years, or is no longer disabled, whichever shall first occur as well as continuation of her life insurance, vision insurance and dental insurance, without interruption or further penalty.

The Plaintiff is and has been totally disabled since no later than January 2, 2003 by reason an unsuccessful second surgery for the removal of the disc located between Lumbar 4 and Lumbar 5 spinal processes which has resulted in constant and extreme lower back pain, with lower left leg pain, left hip pain, left lateral thigh pain going from the left thigh into the left lateral foot. She now walks with a marked right limp and generally needs and uses a cane. Testing has confirmed L4 radiculapathy, L5 radiculapathy, dysesthetic (pain) resulting from disease of the nerve root at the L5 spinal level. It is a burning pain emanating from the nerve at the at the levels of the spinal cord surgical site. The Plaintiff also experiences unexpected and unpredictable loss of sensation and numbness in the left foot.

In addition and by reason of new and additional case law and statutes, the Plaintiff Royer, is and should be entitled to receive her short-term and long-term disability benefits without any offset for the Social Security Title II, SSDI total disability benefits awarded to her by the Social Security Administration on September 24, 2004.. In addition

-4-

to the waiver of the Social Security disability benefit offset, the Plaintiff Royer is entitled to reasonable attorneys fees and costs, interest at the rate of 12% per annum on the overdue sums yet to be paid her (Judge Young decision in Radford Trust, D.Mass, Docket Number 02-12477-WGY, decided June 15, 2004); and the recovery of damages from the Defendants jointly and severally, as provided by HIPAA i.e. The Health Insurance Portability and Accountability Act of 1996 as amended, up to and including October, 2003 resulting from the joint and several misconduct of the Defendants; and is entitled to receive the benefit of an immediate and emergency temporary restraining order and preliminary injunction followed by a permanent injunction from the court, requiring the Defendants, jointly and severally to forthwith pay to the Plaintiff Royer, her usual short-term disability benefits provided for totally disabled employees, from March 27, 2003 up to July 1, 2003; and her full long-term disability benefits from July 2, 2003 up to and including the present and for the immediate future and thereafter to be determined in accordance with the final judgment entered in the within action.

5. The Defendant Blue Cross and Blue Shield of Massachusetts, Inc. is administrator, fiduciary and the payor of the benefits of and its employee welfare benefit plan i.e. to wit, the Omnibus Welfare Benefit Plan, (hereinafter referred to as the "Defendant BCBS,") is and was the employer of the Plaintiff, Royer since September, 1985, and at all times relevant hereto maintains an usual place of business in the Commonwealth of Massachusetts at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02171 and at Landmark Office Center, 401 Park Drive, Boston, MA 02115. The Defendant BCBS, is, was and remains responsible to pay to the Plaintiff Royer, her short-term disability benefits as a result of her total disability after the first 11 days absence from work by reason of damage to her spine which requiring her to undergo her second back surgery, which surgery rendered her totally disabled from working. This Defendant paid short-term disability benefits from the 11th day after the onset date of total disability i.e. to wit January 13, 2003 up to March 22, 2003 at her full salary, but arbitrarily and capriciously and otherwise did wrongfully, willfully and unreasonably discontinue the payment of her short-term disability benefits as of on and after March 22, 2003 through July 1, 2003, at which time the employee, the said Plaintiff Royer, says she then became entitled to long-term disability benefits pursuant to the Blue Cross Blue Shield's Omnibus Welfare Benefit Plan i.e. its short-term and long-term disability plan of which the employer, Blue Cross and Blue Shield of Massachusetts, Inc., and its staff are fiduciaries and administrators. This Defendant was a conflicted and key participant, jointly and severally, with the other defendants in the wrongful denial of disability benefits to which the Plaintiff Royer was and is entitled. These conflicted Defendants also violated the HIPAA Act in the handling of the Plaintiff Royer's disability claims.

By reason of its direct participation, jointly and severally in determining entitlement to benefits and by reason of the Defendant BCBS being required to pay any disability benefits awarded, the Defendant BCBS operates under a conflict of interest and

-5-

therefore, the Plaintiff Royer, is entitled to a de novo review and a trial on the merits. See FOUGHT v. UNUM LIFE INS. CO OF AMERICA, 379 F.3d 997 (10th Cir. 2004). A "conflicted fiduciary," may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries. See BROWN V. BLUE CROSS AND BLUE SHIELD, INC. 898 F 2d. 1556, 1565 (11th Cir. 1990).

6. The Defendant, Kemper National Services, Inc., (hereinafter referred to as the "Defendant Kemper") is and at all times relevant hereto, was jointly and severally participating with the conflicted Defendant, BCBS in the determination of entitlement to benefits as a direct servant and/or agent of the Defendant, BCBS. The Defendant Kemper has had, and at all relevant times hereto has maintained an usual place of business as Kemper Services, at Blue Cross Blue Shield of Mass Claims Unit, P.O. Box 189151, Plantation, FL 33318-9151, 1-(866)-439-6584, also known as 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33318. This Defendant now and formerly assists in servicing clients nationwide, including the Defendant BCBS. This Defendant, jointly and severally, was a key participant in the wrongful denial of disability benefits to which the Plaintiff Royer, was entitled; and in the process did violate the HIPAA Act to the detriment and prejudicial damage of the Plaintiff Royer.

7. The Defendant, Broadspire Services, Inc., (hereinafter referred to as the "Defendant Broadspire,") also services its clients nationwide and also is and was jointly and severally participating with the Defendant BCBS and the Defendant, Kemper, in the determination of entitlement to benefits as a direct servant and/or agent of the Defendant BCBS. This Defendant also maintains its offices at the same address as the Defendant BCBS' claims unit at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324-4036. This Defendant did also violate the HIPAA Act in the process of the wrongful denial of the Plaintiff Royer's claims for disability benefits by willfully and deliberately ignoring the specific limitations set forth in the Plaintiff's written authorizations.

8. The Defendant, Lynn Toney Collins, (hereinafter be referred to as the "Defendant Collins,") is an employee of the Defendant, BCBS and has as her usual office address at the usual downtown claims offices of the Defendant BCBS, at the Landmark Office Center, 401 Park Drive, Boston, MA 02215. This Defendant is also directly involved with determining eligibility of benefits for disabled employees of the Defendant BCBS and did also violate the HIPAA Act in the process of participating in the wrongful denial of the Plaintiff's claims for disability benefits

9. The Defendant, Beth Danna, also known as Elizabeth A. Danna (hereinafter referred to as the "Defendant Danna,") is also an employee of the Defendant BCBS and is also involved in the determination of eligibility of disabled employees as an employee of the conflicted fiduciary and administrator, the Defendant BCBS. This Defendant has as

-6-

and for her usual office address, Blue Cross and Blue Shield of Massachusetts, Inc. 100 Hancock Street, Quincy, MA 02171, and this Defendant did also violate the HIPAA Act in the process of participating in the wrongful denial of the Plaintiff's claim for disability benefits.

10. The Defendant, Tara Morris a/k/a Andrenette Morris (hereinafter referred to as the "Defendant Morris,") is a claims adjuster for long-term disability benefits, working for the Defendant Broadspire, jointly and severally, at and with the Defendant BCBS' (conflicted) Claims Unit. Her usual office address is 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324. This Defendant was also jointly and severally responsible for the violation of the HIPAA Act in the wrongful and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

11. The Defendant, Guillermo (Bill) Rodriguez, (herein after referred to as the "Defendant Rodriguez,") is a claims adjuster for short-term and long-term disability who at all times relevant hereto was a claims adjuster through the Defendant, Kemper National Services, Inc. and was also jointly and severally responsible for working for the conflicted Defendant, Blue Cross Blue Shield's claims unit having the same office address as the Defendant, BCBS, the Defendant Broadspire, and the Defendant Morris at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324. This defendant was also jointly and severally responsible for the violation of the HIPAA Act in the wrongful  and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

12. The Defendant, Jennifer Feeney, (hereinafter referred to as the Defendant Feeney) is and was at all times relevant hereto an employee of the Defendant, BCBS, with an usual office address at the Defendant, BCBS' offices at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02171, who also participated, jointly and severally,  in the wrongful and prejudicial denial of the Plaintiffs claim for disability benefits and as are the other Defendants herein,  was also jointly and severally responsible the violation of the HIPAA Act in the aforesaid wrongful and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

13. The Defendant, Marilyn L. Ramnarine, (hereinafter referred to as the "Defendant Ramnarine,") is another employee of the conflicted Defendant BCBS who at all times relevant hereto had an office address at the Defendant BCBS' claim unit at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324. This defendant was also jointly and severally responsible for the violation of the HIPAA Act in the wrongful  and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

14. The Defendant, Maida Poirier (hereinafter referred to as the "Defendant Poirer,") is another employee of the conflicted Defendant BCBS located at its claim

-7-

unit/benefits department at the Landmark Center, 401 Park Drive, Boston, MA 02215. This defendant did likewise jointly and severally participate in the wrongful denial of the disability benefits sought by the Plaintiff, and did likewise, jointly and severally violate the HIPAA Act in the wrongful and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

15. The Defendant, Kathy Grullon-McCarth, (hereinafter referred to as the "Defendant, Grullon-McCarth,"and/or the Defendant Grullon") was also an employee of the Defendant, Kemper, operating from the conflicted Defendant BCBS' claim offices at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324. This defendant was also jointly and severally responsible for participating in the violation of the HIPAA Act in the wrongful and prejudicial denial of the Plaintiff Royer's claim for disability benefits.

16. The Defendant, Sheldon B. Myerson, MD., (hereinafter referred to as the "Defendant Myerson,") at all times relevant hereto has an usual address at 590 E 25th Street, Hialeah, FL 33013-3841, (305) 696-2824, and is and was a physician who was an non-examining physician engaged by the conflicted Defendants to determine the Plaintiff Royer's entitlement to disability benefits on and after the last payment of short-term disability benefits prematurely ending as of March 22, 2003. Without ever examining and interviewing the Plaintiff Royer, he determined as of April 1, 2003, that she was not entitled to any further disability benefits because he was unable to timely reach the surgeon, and instead chose to rely upon the surgeon's nurse, "Linda," reading some office notes to him over the telephone, prior to a forthcoming visit which the Plaintiff Royer had scheduled with her surgeon. Subsequently, he conferred with the surgeon but by that time, his recommendation to discontinue disability benefits had already been submitted to the Defendants and the Plaintiff's short-term disability benefits had been prematurely discontinued.

This Defendant, Meyerson, after hearing the office notes read to him and not then having the benefit of the opinion of the treating surgeon and indicating in his opinion a lack of sufficient objective evidence to continue the Plaintiff's short-term disability benefits, willfully, deliberately and wrongfully advised the other Defendants not to make any further short-term disability payments to the Plaintiff Royer, by reason of there being a lack of sufficient "objective medical evidence," despite surgery, medical testing and a long and detailed history of ongoing excruciating and burning pain, numbness, substantial lack of mobility and marked limping in the right leg. .

This basis for discontinuance of the Plaintiff's disability benefits i.e. lack of objective medical evidence as to pain and other symptoms had long ago been ruled unlawful and unduly prejudicial as per the decisions of Rose v. Shalala 34 F3d. 13, (1st

-8-

Cir. 1994); Sisco v. Department of Health and Human Services, 10 F .3d 739 (10th Cir. 1993); and Mitchell v. Eastman Kodak Company , 113 F .3d 433 (3rd Cir. 1997), especially when the treating physicians have determined otherwise.

Inasmuch as this Defendant Meyerson is a physician licensed to practice medicine in the State of Florida, his reviewing and rendering an opinion to the Defendants, Blue Cross Blue Shield, Matrix, Kemper and their respective servants, agents and employees as to the health and entitlement to benefits for a patient/claimant living and (before disability) working in the Commonwealth of Massachusetts, may result in his having engaged in the unlawful practice of medicine without a license issued by the Commonwealth of Massachusetts, all in potential violation of G.L. c. 112 § 2-7 and 243 CMR 2.01-2.11.

Additionally, the authorization form signed by the Plaintiff Royer, restricted release of medical information to "written information," and not verbal information. Therefore, the multiple violations of the restricted and limited authorization form is in violation of the rules and regulations of HIPAA and renders the decision to deny the Plaintiff most of her short-term disability benefits, and all of her long -term disability benefits unlawful and in clear violation of the terms of the authorization signed. Any decision reached by such unlawful methods should be reversed, *ab initio*.

Further, this Defendant has a history of having been involved in other ERISA litigation and this Defendant is not an orthopedic surgeon nor an orthopedic specialist. His specialty is neurology. Also and conveniently for the Defendant Blue Cross, this Defendant practices medicine approximately 1500 miles from Massachusetts and is therefore much less accessible to the Plaintiff Royer and her Massachusetts' counsel for the taking of his deposition.

In his review, the determination and recommendation of denial of disability benefits has resulted in his and the other Defendants having violated the privacy provisions of the HIPAA Act, jointly and severally, as well as wrongfully and without just basis, recommending and causing the denial and discontinuance of the Plaintiff's short-term disability benefits, as well as total denial of all of her long-term disability benefits.

It was based upon the opinion of this non-examining physician and the Defendant Cohan, that the Defendant Blue Cross Blue Shield ordered the Plaintiff to return to work by September 29, 2003, or be fired.

17. The other non-examining and non-interviewing physician for the Defendants was the Defendant, Vaughn D. Cohan, MD., (hereinafter referred to as the Defendant Cohan), also of Florida i.e. to wit 234 Coral Cay Terrace, Palm Beach Gardens, FL 33418-4004, (561) 775-9209, with offices at 300 71st Street, Miami Beach, FL 33141,

-9-

(305) 861-4020, who likewise never took the time and opportunity to personally examine or interview the Plaintiff Royer, but nevertheless recommended to the Defendants that the disability benefits sought by the Plaintiff not be paid.

As did the other Defendants, this Defendant Cohan evaluated the Plaintiff Royer, a patient in Massachusetts, and appears to have done so in violation of the laws against practicing medicine in the Commonwealth of Massachusetts without a license i.e. to wit G.L. c. 112, §2-7, as well as 243 CMR 2.00-2.09, and also in violation of the HIPAA act by exceeding the authorization form signed by the Plaintiff Royer, which prohibited the transmission of her medical information unless it was in writing and unless a copy of same was simultaneously forwarded to her and to her attorney of record. Under the circumstances, he was not authorized nor qualified to render any opinion and decision to deny all disability benefits to the Plaintiff after March 22, 2003, by having violated the stringent privacy provisions of the authorization in violation of the HIPAA, Act.

Likewise, this Defendant physician is not a specialist in orthopedic surgery but as does the Defendant Meyerson, specializes in neurology. Also and conveniently for the Defendant Blue Cross, this Defendant practices medicine approximately 1500 miles from Massachusetts and is therefore much less accessible to the Plaintiff Royer and her Massachusetts' counsel for the taking of this Defendant's deposition.

18. The conduct of the Defendants, jointly and severally, in the decision to deny the Plaintiff Royer's disability benefits after March 22, 2003, despite substantial medical evidence to the contrary by her multiple treating and examining health care providers; and despite substantial in-depth vocational evaluation by one of the leading experts in such functional capacity evaluations, renders the decision of the Defendants to deny disability and related benefits to the Plaintiff Royer, wrongful, unlawful, unreasonable and at the very least, "arbitrary and capricious." The Defendant Blue Cross willfully and wrongfully terminated all of the other remaining multiple employee benefits which the Plaintiff otherwise would still have had available to her i.e. her life insurance, vision and dental coverage and same should be restored retroactively, without penalty and without interruption.

## SYNOPSIS

19. The Plaintiff Royer is a 51 year old woman who had been an 18 year employee of the Defendant, Blue Cross, having received exemplary reviews and work ethics, and generally exceeding goals set for her by those reviewing her performance. She had an excellent work history during those 18 years, working the 6:00 A.M. to 2:00 P.M. shift, Monday through Friday. She was extremely active in her position as a claims processor for the Defendant Blue Cross, and was one of the most well-liked, well-informed, articulate and personable staff members working for the Defendant, Blue Cross. She was always very helpful to her colleagues, acted as their team leader in teaching and advising them, and when healthy and working, was well-liked and well-respected by not only the

-10-

Defendant Blue Cross but the subscribers who relied upon the Defendant, Blue Cross for health care coverage.

Her position although somewhat sedentary in its official description was anything but. The position she held as Claims Processer III which earned her exemplary reviews required her to constantly sit at a computer, then stand up walk to the filing cabinets, then open drawers, both high and low, bend, kneel, carry, lift and then go to another section of the office where she would retrieve additional materials, and then return again to her desk to her computer and then repeat the process continuously, for an 8 hour day with the exception of a one-half hour lunch break.

From the time she began work at the Defendant, Blue Cross she had always performed in an outstanding, professional and highly regarded manner. She was very knowledgeable about the internal rules, regulations and procedures and had assisted many others especially in resolving the most complex claims.

In or about the latter part of September, 2002 to October, 2002, a back problem previously and successfully surgically corrected years earlier, flared anew and this began to gradually limit her mobility and agility.  She was no longer able to perform the additional extra activities which she was used to doing and  even had difficulty responding and moving about during the Defendant Blue Cross' fire drills.

The surgeon who had previously surgically and successfully corrected her back problem of many years ago, had long since retired and therefore, she was required to obtain the services of another orthopedic surgeon.

The Plaintiff Royer began to treat with Michael V. DiTullio, MD of South Weymouth, MA, affiliated with the South Shore Hospital in Weymouth which was also close and convenient to the Plaintiff's home in Braintree, MA.

The Plaintiff struggled to continue working but was unable to do so.  As a result, her last day of work was on December 31, 2002.

Surgery by Dr. Ditullio was scheduled for and took place on January 13, 2003. Unfortunately, this second and subsequent surgery was unsuccessful and the Plaintiff experienced pain, numbness, weakness and limitation of motion far more severe than she had experienced before this, the second of two surgeries. She was totally disabled as set forth in paragraph 4, *supra*.

Based upon the flare-up and following her second but unsuccessful surgery on January 13, 2003, and its resulting complications, the Defendant Blue Cross approved the Plaintiff for 11 days vacation pay followed by short-term disability benefits from January 13,2003 through March 22, 2003 for a period of  10 weeks and then denied her any short-term disability benefits thereafter inasmuch as the peer reviewing physician, Dr.

-11-

Meyerson, could not   determine any objective medical evidence   to warrant her continuing to remain so  disabled as to be unable to return to work. Instead of reaching the surgeon directly, this Defendant Meyerson based his decision initially upon having a nurse from the office of Dr. Ditullio verbally read the doctor's office notes over the telephone to Dr. Meyerson. After the Plaintiff's short-term disability benefits were discontinued, Dr. Meyerson or some other physician acting in behalf of the Defendant Blue Cross conferred by telephone with the surgeon, but no benefits were ever restored or paid even though Dr. Ditullio, referred the Plaintiff to a second orthopedic surgeon, Eric J. Woodard, MD, Chief of Orthopedic/Spinal Surgery at Brigham and Women's Hospital. He was the specialist who advised the Plaintiff that it was most unlikely that the Plaintiff would ever be able to return to her past position or any other substantial gainful work activity.

When Dr, Woodard who was referred to the Plaintiff by her surgeon, Dr. DiTullio, advised her that she would be unable to return to work, she buried her face in her hands and sobbed.

All of the Plaintiff's treating and examining physicians and health care providers have advised her that she should not expect to return to work given the severity of her back condition.

*The Plaintiff's surgeon, Dr. Ditullio, with the consent of the Plaintiff, offered the Defendant Blue Cross the opportunity  to have a local IME of its own choosing and at its own expense,  examine and evaluate the Plaintiff to review and determine the Plaintiff's  inability to work, but that offer  was declined  and  the determination not to pay the Plaintiff her disability benefits, remained in full force and effect, along with the Plaintiff's discharge as an employee.*

*Shortly prior to the filing of this litigation, the Plaintiff through undersigned counsel renewed the offer but it was not accepted.*

On March 25, 2004, the Plaintiff underwent an in-depth functional capacity evaluation personally performed by Paul R. Blatchford, Ed.M , a nationally renowned vocational expert. After substantial testing, he determined the Plaintiff to be totally disabled from returning to her position at the Defendant Blue Cross and also rendered his opinion under oath, that she would be unable to return to or engage in and maintain any substantial gainful employment activity.

The Plaintiff applied for Social Security Disability Benefits i.e. Title II, SSDI. Without the need for a hearing but on the record and based upon all the documentation before him, the United States Administrative Law Judge on September 24, 2004, determined that the Plaintiff was totally and permanently disabled and entitled to Title II Social Security Disability Benefits  based upon an onset date of  January 2, 2003.

-12-

The Plaintiff has participated in and attempted numerous treatments and therapies, i.e. nerve blocks, injections and many others in an attempt to alleviate her constant and severe pain, all to no avail.

In addition the Plaintiff now generally requires the use of a cane when leaving home and also has qualified for a handicapped placard from the Commonwealth of Massachusetts', Registry of Motor Vehicles.

During stages of her disability, the Plaintiff provided written limited authorization for the Defendants to obtain her *written* (emphasis added) medical information with the provision that whatever they did obtain, they would immediately and simultaneously send a photocopy of same to her and to her undersigned counsel of record. The Defendants, in denying the Plaintiffs short-term and long-term disability benefits ignored the clearly articulated limitations of the written authorization provided, jointly and severally, did willfully and wrongfully use information acquired in violation of said limited authorization form and in so doing did jointly and severally violate HIPAA and should be held accountable and jointly and severally subject to, and responsible for, sanctions, fines and damages provided by HIPAA.

Further, on June 25, 2003, the Plaintiff by counsel made her initial written demand by Certified Mail Return Receipt Requested requiring the Defendants to produce documents required by 29 USC §1132 et seq., and to date, not all of the documents requested and to which the Plaintiff is and was entitled were produced, despite subsequent formal and written follow-up demands. When followed up, the legal division of the Defendant at Landmark Center in Boston would indicate that the Quincy office had those documents and when Quincy was called, the Defendants would say that the legal division had said documents, or used words susbstantially to that effect.

The Plaintiff has exhausted and fully satisfied all internal and administrative remedies available to her to enable her to commence this action for the relief she seeks.

Under all of the circumstances, the Plaintiff is entitled to the issuance of a temporary and preliminary injunctive order by this court for the immediate payment to the Plaintiff of all unpaid short-term and long-term disability benefits thus far withheld pursuant to the improper conduct of the Defendants acting jointly and severally. Any further delay in the payment of the short-term and long-term disability benefits to the Plaintiff will result in her suffering further irreparable harm.

## COUNT ONE
## CLAIM FOR SHORT-TERM DISABILITY BENEFITS

20. Paragraphs 1-19 above are incorporated by reference as if separately set forth herein.

-13-

21. From March 22, 2003 through July 1, 2003, the Defendants, jointly and severally, did wrongfully, improperly, unreasonably, and arbitrarily and capriciously deny the Plaintiff the short-term disability benefits to which she was entitled at the rate of $668.20 per week together with flex dental coverage and flex basic life insurance coverage , all to her great and accruing damage. The principal sums of short-term disability benefits now overdue and still accruing to the Plaintiff for her short -term disability coverage from March 22, 2003 to July 1, 2003, is 10 weeks @ $668.20 per week for a principal and primary balance now due and owing to the Plaintiff in the minimum sum of no less than Six Thousand Six Hundred Eighty-Two ($6,682.00) Dollars U.S.

**WHEREFORE**, for this the first count, the Plaintiff demands judgment in the sum of no less than Six Thousand Six Hundred Eighty-Two ($6,682.00) Dollars U.S., together with prejudgment interest at the rate of 12% per annum, reasonable legal fees and expenses together with costs.

## COUNT TWO
## CLAIM FOR LONG-TERM DISABILITY BENEFITS

22. Paragraphs 1-21 are incorporated by reference as if separately set forth herein.

23. The Plaintiff Royer is, has been and remains totally and permanently disabled since January 2, 2003, by reason of her totally disabling and painful back condition and scar tissue from her second but unsuccessful surgery of January 13, 2003, and is and was vested and entitled to seek and obtain long-term disability benefits since the date her entitlement to short-term disability benefits.

24. The Plaintiff Royer is entitled to long-term disability benefits from July 2, 2003 up to the present and for as long as she remains totally disabled up to and including age 65 years, whichever shall first occur.

25. The Plaintiff Royer's rate of reimbursement of long-term disability benefits is 60% of her last usual monthly income while an active employee of the Defendant Blue Cross Blue Shield working no less than 30 hours per week prior to the onset of her total disability and results in her being entitled to monthly long-term disability benefits of One Thousand Six Hundred and Six and 31/100 ($1, 606.31) Dollars per month with a past due balance currently owed for 20 months for a present balance through February, 2005, in the sum of Thirty-Two Thousand One Hundred Twenty-Six and 20/100 ($32,126.20) Dollars U.S.

**WHEREFORE,** the Plaintiff demands judgment ordering the Defendants, jointly and severally to forthwith pay to her the retroactive sums due and owing to her from July,

-14-

2003 through February 2005, at the monthly rate of $1,606.31 for a present amount due and owing through February, 2005 in the sum of $32,126.20, together with prejudgment interest at the rate of 12% per annum plus reasonable legal fees and expenses as provided by law; and Plaintiff demands that judgment issue requiring the Defendants, jointly and severally, to continue to pay the Plaintiff's long-term disability benefits and to maintain her life insurance, vision insurance and dental insurance retroactively, without cost or interruption, until she has attained age 65 years, or until she is no longer totally disabled from engaging in and maintaining substantial gainful employment activity, whichever shall first occur.

## COUNT THREE
## CLAIM FOR BREACH OF DUTY OF DISCLOSURE

26. Paragraphs 1-26. are incorporated by reference as if separately set forth herein.

27. On June 25, 2003, the Plaintiff made written demand upon the Defendants, Blue Cross, the Blue Cross Plan, the Defendant Kemper and the Defendant Matrix, as well as the legal division of the Defendant Blue Cross for the production of documents as permitted in accordance with 29 USC 1132(a)-(c)(1) et seq.

28. The Defendants failed to produce all of the requested documents as required as a result of which the Plaintiff is entitled to the sum of $110.00 per diem from 30 days after the date of demand up to and including the present and continuing.

29. Further, the willful failure of the said Defendants to timely produce and disclose all of said documents should result in the said Defendants being barred by "collateral estoppel," as well as "unclean hands," from defending the within action.

**WHEREFORE,** the Plaintiff demands judgment for the sum of $110.00 per day from 30 days after the date of initial demand of June 25, 2003 up to the present, and that the Defendants named in this Count Two, (a) are and should be required to pay the Plaintiff, said sum of $110. per diem from July 25, 2003, to the present i.e. 489 days, the sum of Fifty Three Thousand Seven Hundred and Ninety ($53,790.00) Dollars U.S. together with interest at the rate of 12% per annum, together with reasonable legal fees and expenses; and costs; and (b) should be barred from defending the within action, with a default judgment to enter against said Defendants for all sums and all relief to which the Plaintiff is and should be entitled.

## COUNT FOUR
## AWARD OF LEGAL FEES AND EXPENSES

30. Paragraphs 1-29 are incorporated by reference as if separately set forth herein.

-15-

31. The denial of the Plaintiff's short-term disability benefits from March 22, 2003 to July 1, 2003; and the denial of her long-term disability benefits from July 2, 2003 to the present and for as long as she remains totally disabled or until she attains age 65 years, which ever shall first occur, was arbitrary and capricious at best, and willful and knowingly wrongful and deliberate, inasmuch as all of her treating health care professionals determined that the Plaintiff was totally disabled from returning to work whenever examined by any of them. Some prognosticated that she might be well enough in time to return to work, but none could or would provide an exact date when she would be healthy enough to do so.

Despite same, the Defendants did not avail themselves of the opportunities afforded to have any one of their chosen IMEs personally interview and examine Plaintiff, nor says the Plaintiff, does it appear that they wanted to so do.

The Plaintiff says that the Defendants were content to continue denying disability benefits based upon their non-examining medical experts peer review opinions (based in part upon office notes read to them over the telephone by a staff member other than the physician who performed her back surgery), that there was insufficient *"objective,"* medical evidence to justify any further disability payments after March 22, 2003.

The Plaintiff says that as a result, the non-examining medical experts' opinions were invalid and unreliable and willfully ignored a significant post-surgical history of the Plaintiff's ongoing extreme pain and burning, numbness, limitations of motion and severe weaknesses experienced by the Plaintiff, without ever personally examining or interviewing her.

Therefore, the Plaintiff says that the Defendants' are conflicted and as such their conduct in the denial of short-term and long-term disability benefits, under the given circumstances, constituted extreme bad faith and culpability.

32. It appears that if ordered to pay the Plaintiff's reasonable legal fees and expenses for the time and effort devoted to this action, the Defendants, jointly and severally, have the ability to satisfy any such award of legal fees and expenses.

33. Further, the Plaintiff says that it is and should be self-evident that an award of legal fees and expenses would and should deter the Defendants, jointly and severally, from denying short-term and long-term disability benefits to other deserving claimants and beneficiaries enrolled in the same as well as other similar and/or related ERISA plans.

34. The Plaintiff also says that an award of reasonable legal fees and expenses would result in significantly more benefit being conferred upon the members of the plan.

35. Based upon the merits of the Plaintiff's claim for unpaid short-term disability benefits and the Plaintiff's claim for long-term disability benefits from July 2, 2003 up to the

-16-

present and for the foreseeable future, for as long as she remains totally disabled from working or until she attains age 65 years, whichever shall first occur, the Plaintiff says that the merits of her claims for disability benefits are far superior than the bases proffered by the Defendants for denial.

36. The Plaintiff's conduct in this action is in the best interests of all the participants in the Plan and the relief granted hereunder will benefit all such participants.

37. Therefore, the Plaintiff is entitled to recover reasonable legal fees, expenses and costs herein pursuant to section 502(g)(1) of ERISA, 29 USC § 1132(g).

**WHEREFORE**, and pursuant to 29 USC § 1132(g)(1), et seq., the Plaintiff demands judgment for an award of reasonable counsel fees and expenses, together with interest and costs.

### COUNT FIVE
### VIOLATION OF HIPAA

38. Paragraphs 1-37. are incorporated by reference as if separately set forth herein.

39. On or about April 10, 2003, and thereafter, the Plaintiff issued authorization in writing, authorizing the Defendants, jointly and severally, to review her *written* records and *written* information of her treating health care professionals, provided further, a copy of each written record and written information acquired and used or reviewed by the Defendants, jointly and severally, was simultaneously forwarded to the Plaintiff and her counsel.

40. Based upon the records provided by the Defendants to and in behalf of the Plaintiff, the Defendants failed and willfully and deliberately ignored the clear limitations set forth in the authorization form duly executed and provided by the Plaintiff to the Defendants.

41. The Defendants, their servants, agents and employees both jointly and severally, and willfully, deliberately and recklessly did otherwise fail to honor the privacy and restriction provisions set forth in the Plaintiff's authorization, all to her great damage and in clear violation of the specific provisions of HIPAA.

**WHEREFORE,** for said violations of the HIPAA Act, the Plaintiff demands judgment against the Defendants, jointly and severally, for the maximum sanction, penalty and award of no less than $200,000. each, or as the court may otherwise deem meet and proper, together with a separate award of legal fees and expenses, prejudgment interest and costs.

-17-

## COUNT SIX
## LIABILITY OF PLAN SPONSOR & REMOVAL
## OF CURRENT FIDUCIARIES AND ADMINISTRATORS

42 Paragraphs 1-41. are incorporated as if separately set forth herein.

43. The Defendant Blue Cross Blue Shield of Massachusetts, Inc. , as Plan Sponsor and the fiduciary who appointed the other Defendants to perform their respective fiduciary, administrator, human resource, functional capacity evaluation and related services and duties as more specifically set forth in paragraphs 5-18 herein inclusive, failed to assure that each of them and all of them performed their duties in accordance with the requirements of ERISA, and in accordance with its own rules and regulations regarding short-term disability and other benefits. By such failures, the Defendant, Blue Cross Blue Shield of Massachusetts, Inc. has violated its own fiduciary and administrator duties under section 404 and 405 of ERISA, 29 USC §§1104 and 1105. Defendant plan sponsor Blue Cross Blue Shield of Massachusetts, Inc., is therefore jointly and severally liable for the correction of the breaches of fiduciary duty specified above and should be sanctioned for its failure to properly oversee to the fair, correct and equitable conduct of the other Defendants. Further, the Plaintiff says that the Defendants, jointly and severally, denied her the benefits to which she is entitled, as part of an ongoing management scheme to wrongfully reduce the payment of disability benefits and in turn, increase its schedule of assets and/or profits in its accounting summaries.

44. The Defendants, jointly and severally, have shown themselves, by the conduct described herein, to be unwilling or unable and incompetent to perform the duties required of the Fiduciaries and Administrators of this Plan under ERISA. Section 409(a) of ERISA, 29 U.S.C. § 1109(a), authorizes "removal" of a fiduciary and administrator in such circumstances.

     **WHEREFORE**, the Plaintiff demands judgment removing all of the Defendants named in paragraphs 5-18 inclusive, from all administrative, fiduciary and human resource positions under the Plan; and that an appropriate independent financial institution or independent professional plan administrator; or receiver be appointed by the court in their stead; and sanctions be imposed upon all of the Defendants, jointly and severally, for the payment to the Plaintiff of $10,000,000. U.S. for the benefit of the Plaintiff, for the Defendants'joint and several misconduct; acts of bad-faith, culpability and for the implementation of a wrongful managerial scheme. Further, it be ordered that each Defendant be forever barred from performing any further acts in the administration and interpreting the terms, covenants and conditions of any and all ERISA plans as well as any and all other disability insurance and/or employee benefit plans which are in any way involved in the determination of an employee and/or beneficiary's disability.

-18-

## SUMMARY OF RELIEF SOUGHT

**WHEREFORE,** and by way of Summation of Relief Sought, the Plaintiff demands the court to enter the appropriate judgments and orders to award the Plaintiff the following relief, in addition to any and all other relief in favor of the Plaintiff, which this court determines to be meet and just:

(1) The Plaintiff is to recover from the Defendants jointly and severally, unpaid short-term disability benefits in the sum of $6,682.00 Dollars U.S., together with prejudgment interest at the rate of 12% per annum; and

(2) The Plaintiff is to recover from the Defendants, jointly and severally, unpaid long-term disability benefits retroactive to July 2, 2003, through February, 2005, in the sum of $32,126.20 Dollars U.S., together with prejudgment interest at the rate of 12% per annum and thereafter, shall be timely paid her long-term disability benefits for as long as she remains totally disabled from working or until she attains age 65 years, whichever shall first occur; and

(3) The Plaintiff is to recover from the Defendants, jointly and severally, for the Defendants' breach of duty of disclosure as per 29 U.S.C. 1132 (a)-(c) , the sum of $110 per diem for 489 days for a total now due the Plaintiff in the sum of $53,790.00 Dollars U.S. together with prejudgment interest at the rate of 12% per annum; and

(4) The Plaintiff is to recover from the Defendants, jointly and severally, an award of legal fees and expenses in the sum to be determined by this court and costs; and

(5) The Plaintiff is to recover from each of the Defendants, jointly and severally, an award of $200,000. Dollars U.S., each, for the HIPAA violations, plus prejudgment interest at the rate of 12% per annum; and

(6) The Plaintiff is to be granted a temporary restraining order and preliminary injunction requiring the Defendants, jointly and severally, to forthwith pay to her, her retroactive short-term and long-term disability benefits to the present and to forthwith and timely pay to the Plaintiff, her long-term disability benefits in the sum of $1,606.31 Dollars U.S. per month, pending the outcome of this action, unless or until otherwise ordered by this court; and

(7) The Plaintiff is to be awarded sanctions in the sum of $10,000,000.00 from the Defendants, jointly and severally, for the gross misconduct, culpability, and willful and deliberate wrongful management scheme to reduce payment of disability benefits and increase funds available to the conflicted Defendant, Blue Cross Blue Shield, and engaging and participating in the knowing, intentional, deliberate and unlawful handling of the Plaintiff's claim for disability benefits; and further these Defendants, jointly and

-19-

severally, shall and are hereby  forever barred from participating in any and all claims involving the determination of  disability with regard to any disability insurance policy, ERISA Plan and any employee benefit or welfare plan ; and

(8) The Plaintiff is entitled to forthwith retroactive restoration of her life insurance benefits and her dental and vision benefits, without cost and without there having been any interruption in coverage; and

(9) The Plaintiff is entitled to any and all other further and  favorable relief which this court deems fair, just and meet.

## DEMAND FOR TRIAL BY JURY

Inasmuch as the Defendant, Blue Cross Blue Shield of Massachusetts, Inc. is a *"conflicted,* " Defendant  (emphasis added) and despite this being an action pursuant to ERISA, the Plaintiff respectfully demands trial by jury to the extent permitted by law and a heightened standard of review more favorable to the beneficiary than the "arbitrary and capricious," standard.

Dated: March 3, 2005

The Plaintiff, Jo-Anne Royer By Her Attorney:

BERNARD A. KANSKY, ESQ.
MA BBO # 258040/FED ID #28209
KANSKY & ASSOCIATES
ATTORNEYS AT LAW
468 COMMERCIAL STREET #100
BOSTON, MA 02109-1020
(617) 227-2020 FAX (617) 227-5717
E-Mail: Berakan@aol.com

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.   TITLE OF CASE (name of first party on each side only) Joanne M. Royer v. Blue
     Cross Blue Shield of Massachusetts, Inc.

2.   CATEGORY IN WHICH THE CASE BELONGS, BASED UPON THE NUMBERED NATURE OF SUIT LISTED
     IN THE CIVIL COVER SHEET:  (SEE LOCAL RULE 8(a))

     _____ I.  -  160, 410, R.23, regardless of nature of suit.

     __X__ II.  -  195, 368, 400, 440, 441-444, 540, 550,
     (791)         710, 720, 730, 740, 790, 791, 820, 830,
                   840, 850, 890, 892-894, 895, 950.

     _____III. -  110, 120, 130, 140, 151, 190, 210, 230,
                   240, 245, 290, 310, 315, 320, 330, 340,
                   345, 350, 355, 360, 362, 365, 370, 371,
                   380, 385, 450, 891.

     _____ IV. _  220, 422, 423, 430, 460, 510, 530, 610,
                   620, 630, 640, 650, 660, 690, 810, 861-865,
                   870, 871, 875, 900.

     _____ V.  -  150, 152, 153.

3.   TITLE AND NUMBER, IF ANY, OF RELATED CASES (see Local Rule 8(d)
     None

4.   HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN
     FILED IN THIS COURT?  No

5.   DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS,
     AFFECTING THE PUBLIC INTEREST?  No
     IF SO, IS THE US OR AN OFFICER, AGENT OF EMPLOYEE OF THE US A PARTY?
     (see 28 USC 2403)

6.   IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES
     PURSUANT TO TITLE 28 USC 2284?  No

7.   DO ALL PARTIES IN THIS ACTION RESIDE IN THE WESTERN SECTION OF THE DISTRICT OF
     MASSACHUSETTS IN THE COUNTIES OF:  No

                    Berkshire, Franklin, Hampden, and Hampshire

8.   DO THE ONLY PARTIES IN MASSACHUSETTS RESIDE IN THE WESTERN SECTION?

                    YES_____      NO  X

9.   IF ANY OF THE PARTIES ARE THE US, THE COMMONWEALTH OF MASS, OR ANY GOVERNMENTAL AGENCY
     OF EITHER THE US OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE WESTERN
     SECTION OF THE DISTRICT,  N/A

(Please Print)
Attorney's Name  Bernard A. Kansky, Esq.

Address          468 Commercial Street, Boston, MA 02109-1020

Telephone No.   617/227-2020   (FAX)   617/227-5717

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Joanne M. Royer

**DEFENDANTS**

Blue Cross Blue Shield of Massachusetts, Inc.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Norfolk
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Bernard A. Kansky, Esq.
Kansky & Associates
468 Commercial Street #100
Boston, MA 02109-1020
(617/227-2020)

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☑ 3 Federal Question - ERISA
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                                        AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☑ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

De novo and judicial review to ascertain entitlement to short and long-term disability benefits as well as reinstatement of insurance benefits plus legal fees, expenses and related relief.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☑ YES  ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):

N/A

JUDGE _____  DOCKET NUMBER _____

DATE
3/3/05

SIGNATURE OF ATTORNEY OF RECORD
_[signature]_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____