UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOANNE M. ROYER, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No: 05-CV-10448-GAO |
| | ) | |
| BLUE CROSS BLUE SHIELD OF | ) | |
| MASSACHUSETTS, INC., | ) | |
| BLUE CROSS BLUE SHIELD | ) | |
| LONG TERM DISABILITY BENEFIT PLAN a/k/a) | | |
| OMNIBUS WELFARE BENEFITS PLAN, | ) | |
| KEMPER NATIONAL SERVICES, INC., | ) | |
| BROADSPIRE SERVICES, INC., and | ) | |
| SHELDON MYERSON, MD, | ) | |
| Defendants | ) | |

PLAINTIFF'S AMENDED COMPLAINT AS OF COURSE,
PURSUANT TO FED. R. CIV. P., RULE 15(a)

Now comes the Plaintiff, JOANNE M. ROYER, and amends her Complaint in the above-entitled matter by filing the within Amended Complaint.

The Plaintiff amends this Complaint as a matter of course pursuant to Fed.R.Civ.P., Rule 15 (a) in that no responsive pleading has been filed, and this amendment is being filed prior to the entry of any order or dismissal.

Dated: May 2, 2005

BERNARD A. KANSKY, ESQ.
MA BBO #258040/FED ID #28209
KANSKY & ASSOCIATES
ATTORNEYS AT LAW
468 COMMERCIAL STREET #100
BOSTON, MA 02109-1020
(617/227-2020 FAX 617/227-5717)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
'S OFFICE

... MY -3  P 12: 23

DISTRICT COURT
. OF MASS

| | |
|---|---|
| JOANNE M. ROYER, <br> Plaintiff ) <br> ) <br> ) <br> V. ) <br> ) <br> BLUE CROSS BLUE SHIELD ) <br>     OF MASSACHUSETTS, INC., ) <br> BLUE CROSS BLUE SHIELD ) <br> LONG-TERM DISABILITY BENEFIT ) <br> PLAN, a/k/a OMNIBUS WELFARE ) <br> BENEFITS PLAN ) <br> KEMPER NATIONAL SERVICES, INC., ) <br> BROADSPIRE SERVICES, INC., and ) <br> SHELDON MYERSON, MD., ) <br>         Defendants ) | **CIVIL ACTION NO:** <br> **NO: 05-CV-10448-GAO** |

**PLAINTIFF, JOANNE M. ROYER'S, <u>AMENDED COMPLAINT</u> TO RECOVER
ERISA SHORT-TERM DISABILITY AND ERISA LONG-TERM DISABILITY
BENEFITS;  REQUEST FOR PRELIMINARY INJUNCTION; REQUEST FOR A
DE NOVO STANDARD OF REVIEW AND SANCTIONS; AND
CLAIM FOR TRIAL BY JURY**

---

1. This is an action arising under the Employee Retirement Income Security Act
of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to accomplish the following:

(a) recover both short-term and long-term disability benefits due the Plaintiff
under a Blue Cross Blue Shield of Massachusetts, Inc. employee benefit plan for
the employees of Blue Cross Blue Shield of Massachusetts, Inc;

(b) redress breaches of fiduciary duties under ERISA;

(c) recover statutory penalties caused by the Defendants' failure to provide full
disclosure as requested and as required by ERISA;

(d) seek a preliminary injunction ordering and requiring the Defendants to
forthwith pay to the Plaintiff her short-term disability benefits from March 27,
2003 through July 1, 2003, at 100% of usual salary;

(e) pay to the Plaintiff her long-term disability benefits at 60% of usual



-2-

salary from July 2, 2003 to the present, and for as long as the
within litigation is pending, and for as long as the Plaintiff remains totally
disabled from working or until she attains age 65 years whichever shall
first occur;

(f) recover costs of the within litigation, including attorney's fees and
expenses as provided by ERISA;

(g) recover prejudgment interest on the unpaid disability benefits due the Plaintiff
at the rate of 12% per annum in accordance with the Radford Trust
(D. Mass.) decision of Young, J., dated June 15, 2004;

(h) apply the "de novo," standard of review as opposed to the "arbitrary and
capricious" standard;

(i) award Plaintiff damages and sanctions against the Defendants jointly and
severally for the violation of "HIPAA," i.e.Health Insurance   Portability   and
Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 or the Gramm-Leach
-Bliley Act ("GBL"),  Pub. L.106-102, 1338 et seq. a/k/a Kennedy-Kasselbaum
Act, as amended April-October, 2003; and

(j) grant the Plaintiff a Trial by Jury as to all of the foregoing, to the extent
permitted by law under the conflicted circumstances.

## JURISDICTION AND VENUE

2. This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA,
29 U.S.C. § 1132(a), (e)(1) and (f). This court has subject matter jurisdiction pursuant to
29 U.S.C. § 1132(e)(1) and 28 U.SD.C. § 1331. Under section 502(f) of ERISA, 29
U.S.C. § 1132(f), the court has jurisdiction without respect to the amount in controversy
or the citizenship of the parties.

3. Venue is properly in this district pursuant to section 502(e)(2) of ERISA, 29
U.S.C. § 1132(e)(2), in that the subject employee benefit plan is administered in this
district, the breaches of duty herein alleged occurred in this district, and one or more of
the Defendants resides or is located in this district, and pursuant to 28 U.S.C. §1391(b), in
that the causes of action arose in this district.

## PARTIES AND FACTS

4. The Plaintiff is JoAnne M. Royer (hereinafter called the "Plaintiff Royer")
who resides at 76 Joseph Road, Braintree, County of Norfolk, Commonwealth of
Massachusetts, 02184 and was a valued employee of the Defendant Blue Cross Blue

-3-

Shield of Massachusetts, Inc. for 18 years from June 19, 1985 up until she became too sick to work shortly prior to and following her second but unsuccessful back surgery, as a result of which she was fired from her position of 18 years by the Defendant BCBS, effective on or about September 29, 2003. Notwithstanding her discharge, she remains entitled to recover the remaining short-term disability benefits balanace due but unpaid to her in the gross sum of $663.80 per week  from March 27, 2003 up to July 1, 2003; as well as  her long-term disability benefits in the gross sum of $ 1,653.00 per month from July 2, 2003 up to and including the present and for as long as she remains totally disabled until she attains age 65 years, or is no longer disabled, whichever shall first occur; and restoration of her life insurance and dental insurance.

5. In addition, the Plaintiff Royer, should be entitled to receive her short-term disability benefits and all of her long-term disability benefits without any offset to said long-term disability benefits for the Social Security Title II, SSDI total disability benefits awarded to her by the Social Security Administration. In addition to the waiver of the Social Security disability benefit offset, the Plaintiff Royer is entitled to reasonable attorneys fees and costs, interest at the rate of 12% per annum on the overdue sums yet to be paid her (Judge Young decision in Radford Trust, D.Mass, Docket Number 02-12477-WGY, decided June 15, 2004); and the recovery of damages from the Defendants jointly and severally, as provided by HIPAA, i.e., The Health Insurance Portability and Accountability Act of 1996 as amended, up to and including October, 2003, resulting from the joint and several misconduct of the Defendants.

6. The Plaintiff is also entitled to receive the benefit of an immediate and emergency temporary restraining order and preliminary injunction followed by a permanent injunction from the court, requiring the Defendants, jointly and severally to forthwith pay to the Plaintiff Royer, her usual short-term disability benefits provided for totally disabled employees from March 27, 2003, up to July 1, 2003; and her full long-term disability benefits from July 2, 2003, up to and including the present and for the immediate future, and thereafter,  to be determined by and  in accordance with the final judgment entered in this action.

7. The Defendant Blue Cross and Blue Shield of Massachusetts, Inc. (hereinafter referred to as the "Defendant BCBS,") is and was the employer of the Plaintiff, Royer, and at all times relevant hereto has and has had an usual place of business in the Commonwealth of Massachusetts at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02170 and at the Landmark Office Center, 401 Park Dr., Boston, MA 02215. The Defendant BCBS, is, was and remains   responsible to pay to the Plaintiff Royer, her short-term disability benefits as a result of her total disability after the first 11 days absence from work by reason of damage to her spine which required her to undergo her second back surgery and resulted in frequent and severe burning sensations and painful spasms in the back, hips and legs, along with weakness and numbness. These resulted in substantially reduced and limited mobility as well as a inability to remain seated for any period of activity without severe exacerbation of  pain,

-4-

all of which, in combination with the side effects of pain medication, renders her totally disabled from any and all work activity.

8  This Defendant paid short-term disability benefits from the 11th day after the onset date of total disability, i.e., to wit January 2, 2003 up to March 22, 2003, at her full salary, but arbitrarily and capriciously and otherwise did wrongfully, willfully and unreasonably   discontinue the payment of her short-term disability benefits as of on and after March 27, 2003, through July 2, 2003, at which time the employee, the said Plaintiff Royer, says she then became entitled to long-term disability benefits pursuant to the Blue Cross Blue Shield Long-Term Disability Plan a/k/a Omnibus Welfare Benefits Plan of which the employer Blue Cross and Blue Shield of Massachusetts, Inc,. and certain of its staff are fiduciaries and administrators.

9. The Defendant Blue Cross Blue Shield Long-Term Disability Plan a/k/a The Omnibus Welfare Benefits Plan, (hereinafter referred to as the "Plan,") also has an usual place of business at Commonwealth of Massachusetts at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02170 and also at the Landmark Office Center, 401 Park St., Boston, MA 02115. Both the Defendant, Blue Cross and Blue Shield, the employer, and the Defendant Plan are conflicted Defendants inasmuch as the Employer is required to pay short-term disability benefits from its own assets and the Plan is required to pay the first $35,000. of long-term disability benefits from its own assets.

10. The Defendant Employer and the Defendant Plan are conflicted and key participants, jointly and severally, with the other defendants in the wrongful denial of disability benefits to the Plaintiff Royer. These conflicted Defendants also violated the HIPAA Act in the handling of   both the Plaintiff Royer's short and long-term disability claims.

11. By reason of the Blue Cross and Blue Shield Employer and its Disability Plan's direct participation, jointly and severally, in determining entitlement to benefits and in addition to being required to pay certain of any disability benefits approved, these Defendants operate under a clear conflict of interest and therefore, the Plaintiff Royer,  is entitled to a de novo review and a trial on the merits. See: FOUGHT v. UNUM LIFE INS. CO OF AMERICA, 379 F.3d 997 (10th Cir. 2004). A "conflicted fiduciary," may favor, consciously or unconsciously, its interests over the interests of the plan beneficiaries. See also BROWN V. BLUE CROSS AND BLUE SHIELD, INC. 898 F 2d. 1556, 1565 (11th Cir. 1990).

12. The Defendant, Kemper National Services, Inc, (hereinafter referred to as the "Defendant Kemper") is and at all times relevant hereto was jointly and severally participating with the conflicted Defendants BCBS, the Employer and the Plan in the determination of entitlement to benefits as a direct servant and/or agent of these Defendants.

-5-

13. The Defendant Kemper has had, and at all relevant times hereto has maintained an usual place of business as Kemper Services, at Blue Cross Blue Shield of Mass Claims Unit, P.O. Box 189151, Plantation, FL 33318-9151, 1-(866)-439-6584, also known as 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33318.

14. This Defendant services clients including the Defendant BCBS Employer and Plan, nationwide. This Defendant, jointly and severally, was a key participant in the wrongful denial of disability benefits to which the Plaintiff Royer was entitled and also in the process, did violate the HIPAA Act to the detriment and prejudicial damage of the Plaintiff, Royer.

15. Undersigned counsel for the Plaintiff has been informed and therefore avers that the Defendant Kemper is in the process of filing or has filed bankruptcy, but believes and therefore avers that there are ample reserves to satisfy the Plaintiff's claim as well as all other claims for which this Defendant is responsible. If not, then that might be a factor to be considered in the arbitrary and capricious denial of the Plaintiff's long-term disability benefits.

16. The Defendant, Broadspire Services, Inc., (hereinafter referred to as the "Defendant Broadspire,") working jointly and severally with the Defendants, also services its clients nationwide and also is, and was jointly and severally participating with the Defendants Kemper and BCBS Employer and Plan in the determination of entitlement to benefits as a direct servant and/or agent of the Defendants BCBS Employer and Plan. This Defendant also maintains its offices at the same address as the Defendants, Kemper and BCBS Employer and Plan's claims unit at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324-4036.   This Defendant did also violate the HIPAA Act in the process of the wrongful denial of the Plaintiff Royer's claims for disability benefits.

17. The Defendant Sheldon B. Myerson, MD (hereinafter referred to as the "Defendant Myerson,") at all times relevant hereto has an usual address at 590 E 25th Street, Hialeah, FL 33013-3841, (305) 696-2824, and is and was a physician who was an non-examining physician engaged by the conflicted Defendants to determine the Plaintiff Royer's  entitlement to future disability benefits on and after the last payment of short-term disability benefits was made on or about March 22, 2003.

18. Without ever personally examining or interviewing the Plaintiff Royer, the Defendant Myerson, determined that she was not entitled to any further disability benefits because primarily he was unable to timely reach her surgeon.

19. Instead, he chose to rely upon a member of the surgeon's staff reading some of the surgeon's office notes to him over the telephone, even though the Plaintiff was scheduled for an imminent, upcoming and updated visit with her surgeon. The Defendant

-6-

Meyerson could not wait. He was also given the opportunity to personally interview and examine the Plaintiff but declined. When he finally did confer with her surgeon, his recommendation to discontinue disability benefits had already been submitted to the Defendants and the Plaintiff's short-term disability benefits had already been discontinued.

20. In violation of the principles set forth in the <u>Mitchell v. Eastman Kodak Company</u>, 113 F 3d 433 (3rd Cir. 1997), the Defendant Myerson, after hearing the office notes read to him and not then having the benefit of the opinion of the treating surgeon and assuming there was no "objective medical evidence," to determine the level of the severity of complaints of pain, numbness, limitation of motion and weakness experienced by the Plaintiff Royer following her surgery, advised the other Defendants that he could not justify or recommend further payment of short-term disability benefits to the Plaintiff Royer by reason of a lack of ***objective medical evidence,*** (emphasis added*)* to support her degrees of excruciating pain, numbness, limitation of motion, weakness and an overall substantial lack of mobility.

21. This basis for discontinuance of the Plaintiff's disability benefits i.e. lack of "objective medical evidence," as to pain and other symptoms had also been ruled unlawful and unduly prejudicial as per the decisions of <u>Rose v. Shalala</u> 34 F3d. 13, (1st Cir. 2004); and <u>Sisco v. Department of Health and Human Services,</u> 10 F .3d 739 (10th Cir. 1995); especially when the treating physicians have determined otherwise.

22. Inasmuch as this Defendant Meyerson is a physician licensed to practice medicine in the State of Florida, his reviewing and rendering an opinion to the Defendants, Blue Cross Blue Shield, Broadspire (Matrix), Kemper and their respective servants, agents and employees as to the health and entitlement to benefits for a patient/claimant living and previously employed for 18 years by the Defendant Blue Cross Blue Shield in the Commonwealth of Massachusetts, may have resulted in his engaging in the unlawful practice of medicine here in the Commonwealth of Massachusetts, all without a medical license having been issued to him by the said Commonwealth of Massachusetts in potential violation of G.L. c. 112 § 2-7 and 243 CMR 2.01-2.11.

23. Additionally, an authorization form signed by the Plaintiff Royer, restricted release of medical information to "written information," and not verbal information. Therefore, the multiple violations of this restricted release is a violation of the rules and regulations of HIPAA and renders the decision to deny the Plaintiff most of her short-term disability benefits and all of her long-term disability benefits unlawful and clearly contrary to the terms of that authorization as signed. Any decision of denial reached as a result of such unlawful methods should be reversed ab initio.

24. Further, this Defendant Meyerson has a history of having been involved in other ERISA litigation and he is also not an orthopedic surgeon nor an orthopedic

-7-

specialist. His specialty is **neurology.** Conveniently for the Defendant Blue Cross, the Employer and the PLAN, this Defendant practices medicine approximately 1500 miles from Massachusetts and is therefore much less accessible to the Plaintiff Royer and her Massachusetts' counsel for the taking of his deposition and compelling other forms discovery.

25. The only other physician providing guidance to the Defendant Employer, Plan and their servants or agents was another Florida physician in close proximity to the Florida offices of the Defendants. His name is Vaugh D. Cohan and he too did not personally examine or interview the Plaintiff Royer; and he too was not an orthopedic surgeon or orthopedic specialist, but is and was instead also a **neurologist.**

## ADDITIONAL FACTS AND SYNOPSIS
25. The conduct of the Defendants, jointly and severally, in their denial of the Plaintiff Royer's disability benefits after March 22, 2003, was "arbitrary and capricious," and otherwise most unreasonable and unfair.

27. Despite substantial medical evidence to the contrary by the Plaintiff Royer's multiple treating and examining health-care providers and physicians, and despite substantial in-depth vocational evaluation by one of the nation's leading vocational experts in functional capacity evaluations, the decision of the Defendants to deny disability and related benefits to the Plaintiff Royer was based primarily upon two out-of-state physicians who never wanted to, nor personally ever interviewed or examined her. It is even more outrageous considering that Blue Cross as an Employer, as a Plan and as a health-care payor to physicians, had available to it, numerous very qualified orthopedic surgeons and orthopedic specialists here in the Commonwealth of Massachusetts who could have and would have personally interviewed the Plaintiff and her surgeon and other of her treating health-care professionals and could have and would have personally examined the Plaintiff to **truthfully** evaluate her disability level.

28. Although local orthopedic surgeons and specialists would and could have been in a far superior position to render a truthful opinion as to the Plaintiff's ability to work, the Defendants chose instead to use, and were content to rely upon, the hypothetical opinion favorable to the Defendant, Blue Cross, i.e., "...no objective medical evidence to justify further disability payments..." by those distant, non-orthopedic, Florida physician/experts, who would not and could not be bothered to interview nor examine the Plaintiff personally, despite the opportunity; *and who were the least able to truthfully evaluate the Plaintiff's ongoing disability.*

29. As indicated, the Plaintiff Royer is a 53 year old woman who had been an 18 year employee of the Defendant, Blue Cross Blue Shield, having received exemplary reviews and work ethics, generally exceeding goals set for her by those reviewing her performance. She had an excellent work history during those 18 years, working the 6:00 A.M. to 2:00 P.M. shift Monday through Friday. She was extremely active in her position

-8-

as a claims processor for the Defendant Blue Cross , and was one of the most well-liked, well-informed, articulate and personable staff members working for that Defendant. She was always very helpful to her colleagues, acted as their team leader in teaching and advising them, and when healthy and working, was well-liked and well-respected by not only the Defendant Blue Cross and staff, but by the subscribers who relied upon the Defendant, Blue Cross for their health insurance care and coverage.

30. The Plaintiff's position was officially described as "sedentary," and was anything but. The position she held which earned her exemplary reviews required her to constantly: (a) sit at a computer, (b) stand up, (c) walk to the filing cabinets, (d) open drawers, both high and low, (e) bend, (f) kneel, (g) carry files, (h) lift files and then (i) go to another section of the office where she would retrieve additional materials, and (j) then return again to her desk to her computer to repeat the ongoing process constantly for an 8 hour day with the exception of a one-half hour lunch break.

31. From the time she began work at the Defendant, Blue Cross she had always performed in an outstanding, professional and highly regarded manner. She was very knowledgeable about the internal rules, regulations and procedures and had assisted others, even those in positions superior to hers, including her immediate supervisors, especially in resolving the more complex issues.

32. In or about the latter part of September, 2002 to October, 2002, a back problem previously and successfully surgically corrected years earlier, flared anew causing her pain and this substantially limited her mobility and agility. She was no longer able to perform her work the way she had before. She even had difficulty responding and moving about during the Defendant Blue Cross' fire drills.

33. The surgeon who had previously surgically and successfully corrected her back problem many years ago had long since retired and therefore she was required to and did obtain the services of another orthopedic surgeon.

34. The Plaintiff Royer began to see Michael V. DiTullio, MD of South Weymouth, MA, affiliated with the South Shore Hospital in Weymouth which was near the Plaintiff's home in Braintree, MA.

35. The Plaintiff struggled to continue working but was unable to do so, and as a result, her last day of work was on December 31, 2002.

36. Surgery by Dr. Ditullio was scheduled for and took place on January 13, 2003. Unfortunately, this second and subsequent surgery was unsuccessful and the Plaintiff experienced pain, numbness, weakness and limitation of motion far more severe than before this the second of her two surgeries.

37. Based upon the increasingly severe symptoms of pain, weakness, numbness

and limitation of motion following her second but unsuccessful surgery on January 13, 2003, and its resulting complications, the Defendant Blue Cross approved the Plaintiff for 11 days vacation pay followed by short-term disability benefits from January 13, 2003 through March 22, 2003 for a period of 10 weeks and then wrongfully denied her any short-term disability benefits thereafter inasmuch as the Defendant's physicians of choice, not orthopedic surgeons or specialists, i.e., the distant Defendant Dr. Meyerson, and another distant, Dr. Vaugh D. Cohan,, both of Florida, could not find from their distant offices in Florida, any "objective medical evidence," to warrant her pain, pain spasms, numbness, tingling sensations, weakness in her limbs and overall lack of mobility.

38. The Defendant Meyerson based his decision initially upon having a nurse from the office of Dr. Ditullio verbally read the doctor's office notes over the telephone to him. Dr. Meyerson would not or could not wait until he conferred with the Plaintiff's surgeon before telling the other Defendants that he could not justify continuation of the Plaintiff's short-term disability benefits, for lack of "objective medical evidence."

39. Once the Plaintiff's short-term disability benefits were discontinued, they were never reinstated. That too became the basis for the subsequent denial of her long-term disability benefits.

40. The Plaintiff's surgeon, Dr. Ditullio, referred the Plaintiff to a second orthopedic surgeon, Eric J. Woodard, MD, Chief of Orthopedic/Spinal surgery at Brigham and Women's Hospital who advised the Plaintiff, after examining and testing her, that it was most unlikely that the Plaintiff would ever be able to return to work.

41. When so advised, the Plaintiff buried her face in her hands and sobbed uncontrollably. She loved working and she loved her job.

42. Every treating and examining physician and health-care provider has advised the Plaintiff that she should not expect to return to work given the severity of her condition.

*43. The Plaintiff's surgeon, Dr. Ditullio, with the consent of the Plaintiff, offered the Defendant Blue Cross the opportunity to have a local IME of its own choosing and at its own expense, examine and evaluate the Plaintiff to review and determine the Plaintiff's inability to work. However, the Defendant, Blue Cross and Blue Shield, Employer and Plan, declined that offer and their (preferred) determination not to pay the Plaintiff her disability benefits, remained in full force and effect, along with the Plaintiff's discharge as an employee and loss of her life insurance and dental insurance.*

44. The Plaintiff underwent an in-depth functional capacity evaluation personally performed by Paul R. Blatchford, Ed.M , a nationally renowned vocational expert. After

-10-

several hours of substantial testing, to the extent and manner barely tolerable to the Plaintiff, he determined the Plaintiff to be totally disabled from returning to her position at the Defendant Blue Cross and also rendered his opinion under oath that she would be unable to return to, engage in, and maintain any substantial gainful employment activity.

44. The Plaintiff had applied for Social Security Disability Benefits, i.e., Title II, SSDI. Without the need for a hearing and solely on the record, based upon all the documentation before him, the United States Administrative Law Judge determined that the Plaintiff was totally and permanently disabled and awarded to her, Title II Social Security Disability Benefits with an onset date of January 2, 2003.

45. Both the Fully Favorable Decision of the United States Administrative Law Judge and the detailed 11 plus page report of the nationally renowned vocational expert, Paul R. Blatchford, Ed.M. had been provided to the Defendant Broadspire, timely and prior to its last and final internal denial of the Plaintiff's disability benefits.

47. The Plaintiff has participated in, and attempted numerous treatments and therapies, i.e., nerve blocks, injections and many others in an attempt to alleviate her constant and severe pain, all to no avail.

48. In addition the Plaintiff now generally requires the use of a cane when leaving home and also has qualified for a handicapped placard from the Commonwealth of Massachusetts' Registry of Motor Vehicles.

49. In the early stages of her disability, the Plaintiff provided a written limited authorization for the Defendants to obtain her *written* (emphasis added) medical information with the provision that whatever they did obtain, they would immediately and simultaneously send a photocopy of same to her and to her undersigned counsel of record.

50. The Defendants, in denying the Plaintiffs short-term disability benefits from March 22, 2003 through July 1, 2003, by ignoring the clearly articulated limitations of the written authorization provided, jointly and severally, did willfully and wrongfully use information acquired in violation of said limited authorization form and in so doing did joinly and severally violate HIPAA and should be held accountable and jointly and severally subject to and liable for sanctions, fines and damages provided by HIPAA and for related sanctions to be awarded by this court.

51. Further, on April 15, 2003 the Plaintiff by counsel made written demand by Certified Mail Return Receipt Requested requiring the Defendants to produce documents required by 29 USC §1132 et seq. To date, not all of the documents requested and to which the Plaintiff is and was entitled were produced, despite subsequent formal follow-up, written demands.

-11-

52. When followed-up, the legal division of the Defendant at Landmark Center in Boston, MA would indicate that the Quincy, MA office had those documents. When the Quincy, MA office was contacted, the Defendants would say that the legal division in Boston had the documents.

53. To the best of her knowledge, the Plaintiff has exhausted and fully satisfied all internal and administrative remedies available to her for all of the relief she seeks by this action.

54. Under all of the circumstances, the Plaintiff is entitled to the issuance of a temporary and preliminary injunctive order by this court for the immediate payment to her of al. unpaid short-term and long-term disability benefits thus far withheld pursuant to the improper conduct of the Defendants acting jointly and severally, in that any further delay in the payment of the short-term and long-term disability benefits to which the Plaintiff is entitled will result in further irreparable harm.

## COUNT ONE
## CLAIM FOR SHORT-TERM DISABILITY BENEFITS

55. Paragraphs 1-54 above are incorporated by reference as if separately set forth herein.

55. From March 22, 2003 through July 1, 2003, the Defendants, jointly and severally, did wrongfully, improperly, unreasonably, and arbitrarily and capriciously deny the Plaintiff the short-term disability benefits to which she was entitled at the rate of $668.20 per week together with flex dental coverage and flex basic life insurance coverage , all to her great and ongoing damage.

57. The principal sums of short-term disability benefits now overdue and still owing to the Plaintiff for her short -term disability coverage from March 22, 2003 to July 1, 2003, is 10 weeks @ $668.20 per week for a principal and primary balance now due and owing to the Plaintiff in the minimum sum of no less than Six Thousand Six Hundred Eighty-Two ($6,682.00) Dollars U.S.

**WHEREFORE**, for this the First Count, the Plaintiff demands judgment against the Defendant Blue Cross Blue Shield of Massachusetts, Inc. in the sum of no less than Six Thousand Six Hundred Eighty-Two ($6,682.00) Dollars U.S., together with pre-judgment interest at the rate of 12% per annum, together with reasonable legal fees, expenses and costs.

## COUNT TWO
## CLAIM FOR LONG-TERM DISABILITY BENEFITS

58. Paragraphs 1-57 are incorporated by reference as if separately set forth herein.

-12-

59. The Plaintiff Royer is, has been and remains totally and permanently disabled since January 2, 2003 by reason of her painful back condition and from her second but failed spinal surgery of January 13, 2003 and is and was vested and entitled to long-term disability benefits since the date her entitlement to short-term disability benefits, which would have terminated on July 1, 2003, had they been properly and timely paid in full.

60. The Plaintiff Royer is entitled to long-term disability benefits from July 2, 2003 up to the present and for as long as she remains totally disabled up to and including age 65 years, or until she is deceased, whichever shall first occur.

61. The Plaintiff Royer's rate of reimbursement of long-term disability benefits is 60% of her last usual monthly income while an active employee of the Defendant Blue Cross Blue Shield working no less than 30 hours per week prior to the onset of her total disability. For the Plaintiff Royer, this formula results in her being entitled to monthly long-term disability benefits of One Thousand Six Hundred and Fifty-Three ($1,653.00) Dollars per month for 22 months for a present balance as of the April, 2005 date of this Amended Complaint in the sum of Thirty-Six Thousand Three Sixty-Six ($36,366.00) Dollars U.S. and continuing.

WHEREFORE, for this the Second Count, the Plaintiff demands judgment against the Defendants, jointly and severally, for the sum of not less than Thirty-Six Thousand, Three Hundred Sixty-Six ($36,366.00) Dollars U.S., together with prejudgment interest at the rate of 12% per annum plus reasonable legal fees and expenses as provided by law; and a judgment requiring the Defendants, jointly and severally, to continue to pay the Plaintiff's long-term disability benefits and to maintain her life insurance and dental insurance until she has attained age 65 years or until she is no longer totally disabled from engaging in and maintaining substantial gainful employment activity, or until she is deceased, whichever shall first occur.

## COUNT THREE
## CLAIM FOR BREACH OF DUTY OF DISCLOSURE

62. Paragraphs 1-61 are incorporated by reference as if separately set forth herein.

63. On April 10, 2003, the Plaintiff made demand upon the Defendants, Blue Cross, the Blue Cross Plan, the Defendant Kemper and the Defendant Matrix, as well as the legal division of the Defendant Blue Cross for the production of documents in accordance with 29 USC 1132(a)-(c)(1) et seq.

64. The Defendants failed to produce the requested documents as required as a result of which the Plaintiff is entitled to the sum of $110.00 per diem from 30 days after the date of demand up to and including the present and continuing.

-13-

65. Further, the willful failure of the said Defendants to timely produce and disclose said documents should result in the said Defendants being barred by collateral estoppel as well as by coming before this court with unclean hands, from defending the within action.

**WHEREFORE**, for this the Third Count, the Plaintiff demands judgment i.e. for sanctions, at the rate of $110.00 per day from 30 days after the date of demand of April 10, 2003 up to the present; against the Defendants, jointly and severally, for the sum of $110. per diem from May 10, 2003 to the present date of this Amended Complaint i.e. 720 days, the sum of Seventy-Nine Thousand Two Hundred and 00/100 ($79,200.00) Dollars U.S. together with interest at the rate of 12% per annum, reasonable legal fees and expenses and costs; and the Defendants should be barred from defending the within action, with a default judgment to enter against said Defendants for all sums to which the Plaintiff is entitled following a hearing on an assessment of damages.

## COUNT FOUR
## AWARD OF LEGAL FEES AND EXPENSES

66. Paragraphs 1-65 are incorporated by reference as if separately set forth herein.

67. The denial of the Plaintiff's short-term disability benefits from March 22, 2003 to July 1, 2003 and the denial of her long-term disability benefits from July 2, 2003 to the present and for as long as she remains totally disabled or until she attains age 65 years, whichever shall first occur, was arbitrary and capricious at best, and willful and knowingly wrongful and deliberate inasmuch as every treating health-care professional unanimously determined that the Plaintiff was totally disabled from returning to work whenever examined by any of them. In the earlier stages of her disability, some health-care providers hoped that she might be well enough in time to return to work, but none could or would provide an exact date when or if she would be healthy enough to do so.

68. Despite same, the Defendants did not avail themselves of the opportunity set forth in writing by counsel to have any one of their chosen IMEs personally inteview and examine Plaintiff, nor does it appear that they wanted to so do.

69. The Defendants were content to continue denying disability benefits based upon their non-examining medical experts 'peer review,' opinions from afar (based in part upon office notes read to them over the telephone by a staff member other than the physician who performed her back surgery), that there was insufficient *"objective medical evidence,"* to justify any further disability payments after March 22, 2003.

70. The Plaintiff says that as a result, the non-examining medical experts' opinions were invalid and unreliable and did willfully ignore the significant post-surgical history of the Plaintiff's ongoing extreme pain, numbness, weakness and limitations of motion without ever personally interviewing or examining her, thereby declining the

-14-

rare opportunity
afforded to them by the Plaintiff and her surgeon, and later by the Plaintiff through her
counsel.

71. The Plaintiff says that the Defendants' conduct in the denial of short-term and
long-term disability benefits, under the given circumstances, constituted extreme bad
faith, culpability and willfulness.

72. If ordered to pay the Plaintiff's reasonable legal fees and expenses for the time
and effort devoted to this action by Plaintiff's counsel, the Defendants, jointly and
severally have the ability to satisfy in full, a complete award of those legal fees and
expenses.

73. Further, the Plaintiff says that it is and should be self-evident that an award of
legal fees and expenses would and should deter the Defendants, jointly and severally,
from wrongfully denying short-term and long-term disability benefits to other deserving
claimants and/or beneficiaries enrolled in the same as well as other similar and/or related
ERISA plans.

75. The Plaintiff also says that an award of reasonable legal fees and expenses
would result in significantly more benefits being properly and timely conferred upon the
deserving members of the Plan.

76. The Plaintiff says that her claims for unpaid short-term disability benefits and
the Plaintiff's claim for long-term disability benefits from July 2, 2003 up to the present
and for the foreseeable future for as long as she remains totally disabled from working or
until she attains age 65 years, or is deceased, whichever shall first occur, are meritorious.

77. The Plaintiff says that merits of those claims are based upon the opinions of
her many experts who have interviewed and examined her and are far superior to the
opinions of those acting for BCBS who have not personally interviewed and examined
her; those who have declined the opportunity to personally interview and examine her;
those who are not orthopedic specialists or spinal surgeons, those who choose to ignore
and/or "arbitrarily and capriciously," and unreasonably disagree with the favorable and
unanimous opinions of her treating health-care providers, compared to the the fully
favorable and unanimous determinations of: (a) the Social Security Administration,
(approved for total disability on the record and without the need of a hearing); (b) the
nationally renowned vocational expert, Paul R. Blatchford, Ed.M.; (c) the spinal surgeons
and orthopedic specialists who have personally interviewed, treated and examined the
Plaintiff over lengthy periods of time; and (d) their combined, concurring and unanimous
opinions that the Plaintiff is and has been totally disabled from any work activity since
January 2, 2003, up to the present and for the foreseeable future.

78. The Plaintiff's pursuit by this action is in the best interests of all the
participants of the Plan and the relief granted hereunder will benefit all such participants.

-15-

7ϑ. The Plaintiff is entitled to recover reasonable legal fees, expenses and costs herein pursuant to section 502(g)(1) of ERISA, 29 USC § 1132(g).

**WHEREFORE**, for this the Fourth Count, and pursuant to 29 USC § 1132(g)(1), et seq., the Plaintiff demands judgment for an award of reasonable counsel fees and expenses, against the Defendants, jointly and severally,  together with prejudgment interest at the rate of 12%  per annum and costs.

## COUNT FIVE
## VIOLATION OF HIPAA

8ϑ. Paragraphs 1-79 are incorporated by reference as if separately set forth herein.

81. On April 10, 2004 the Plaintiff issued an authorization in writing, authorizing the Defendants, jointly and severally, to review her *written* records and *written* information by and between each other and her treating health care professionals, with the proviso that a copy of each *written* record and *written* information acquired and used or reviewed by the Defendants, jointly and severally, was simultaneously provided to the Plaintiff and her counsel.

82. Based upon the records provided by the Defendants to and in behalf of the Plaintiff, the Defendants failed and willfully and deliberately ignored the clear limitations set forth in the authorization form duly executed and provided by the Plaintiff to the Defendants.

83. The Defendants, their servants, agents and employees both jointly and severally, and willfully, deliberately and recklessly did otherwise fail to honor the privacy and restrictions set forth in the Plaintiff's authorization, all to her great damage and in clear violation of the specific provisions of  HIPAA.

**WHEREFORE,** for this the Fifth Count, the Plaintiff demands judgment against the Defendants, jointly and severally, for the maximum sanction, penalty and award of no less than $200,000. each, or as the court may otherwise deem meet and proper, together with a separate award of legal fees and expenses, prejudgment interest at the rate of 12% per annum and costs.

## SUMMARY OF RELIEF SOUGHT

**WHEREFORE,** and by way of a Summary of Relief Sought, the Plaintiff requests the court to enter the appropriate orders so as to award the Plaintiff the following relief, in addition to any and all other relief  for the benefit of the Plaintiff, which this court determines to be proper:

-16-

(1) The Plaintiff is to recover from the Defendants, jointly and severally, unpaid short-term disability benefits in the sum of $6,682.00 Dollars U.S., together with prejudgment interest at the rate of 12% per annum; and

(2) The Plaintiff is to recover from the Defendants, jointly and severally, unpaid long-term disability benefits retroactive to July 2, 2003, through April, 2005, in the sum of $36,366.00. Dollars U.S., together with prejudgment interest at the rate of 12% per annum and thereafter, shall be timely paid her long-term disability benefits for as long as she remains totally disabled from working or until she attains age 65 years, or is deceased, whichever shall first occur; and

(3) The Plaintiff is entitled to recover from the Defendants, jointly and severally, for the Defendants' breach of duty of disclosure as per 29 U.S.C. 1132 (a)-(c) , the sum of $110 per diem for no less than 720 days as of April 25, 2005,  for a total now due the Plaintiff in the sum of  $79,200.00 Dollars U.S., and continuing to accrue together with prejudgment interest at the rate of 12% per annum; and

(4) The Plaintiff is entitled to recover from the Defendants, jointly and severally, an award of legal fees and expenses in the sum  to be determined by this court and costs; and

(5) The Plaintiff is entitled to recover from each of the Defendants, jointly and severally, an award of $200,000. Dollars U.S., from each Defendant, for the HIPAA violations plus prejudgment interest at the rate of 12% per annum; and

(6) The Plaintiff is entitled to a temporary restraining order and preliminary injunction requiring the Defendants, jointly and severally, to forthwith pay to her, her retroactive short-term and long-term disability benefits to the present and to forthwith and timely pay to the Plaintiff, her long-term disability benefits in the sum of $1,653.00. Dollars U.S. per month, unless or until otherwise ordered by this court; and

(7) The Plaintiff is entitled to an award for sanctions in the sum of $10,000,000.00 from the Defendants, jointly and severally, for the gross misconduct of the Defendants in the knowing, intentional, deliberate and unlawful handling of the Plaintiff's claim for disability benefits and these Defendants, jointly and severally shall and are hereby and forever barred from participating in any and all claims involving the determination of disability; and

(8) The Plaintiff is entitled to forthwith restoration of her life insurance benefits and her dental insurance benefits without there having been any interruption in coverage; and

(9) The Plaintiff is entitled to any and all other further and favorable relief which this court deems fair, just and appropriate.

-17-

## DEMAND FOR TRIAL BY JURY

Inasmuch as the Defendant, Blue Cross Blue Shield of Massachusetts, Inc., both the Employer and the Plan and its respective servants, agents and attorneys are *"conflicted, "* Defendants and despite this being an action founded upon ERISA, the Plaintiff respectfully demands trial by jury to the extent permitted by law.

Dated: May 2, 2005

The Plaintiff, Jo-Anne Royer
By Her Attorney:

BERNARD A. KANSKY, ESQ.
MA BBO # 258040/ FEDERAL #28209
KANSKY & ASSOCIATES
ATTORNEYS AT LAW
468 COMMERCIAL STREET #100
BOSTON, MA 02109-1020
(617) 227-2020 FAX (617) 227-5717
BERAKAN@AOL.COM