IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOANNE M. ROYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO: |
| BLUE CROSS BLUE SHIELD OF ) | NO: 05-CV-10448-GAO |
| MASSACHUSETTS, INC., BLUE CROSS ) | |
| BLUE SHIELD LONG-TERM ) | |
| DISABILITY BENEFIT PLAN, a/k/a ) | |
| OMNIBUS WELFARE BENEFITS ) | |
| PLAN, KEMPER NATIONAL ) | |
| SERVICES, INC., BROADSPIRE ) | |
| SERVICES, INC., AND SHELDON ) | |
| MYERSON, MD., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## BLUE CROSS BLUE SHEILD LONG-TERM DISABILITY BENEFIT PLAN'S ANSWER AND AFFIRMATIVE DEFENSES TO COUNTS I AND II

Blue Cross Blue Shield Long-Term Disability Benefit Plan ("the Plan"), one of the defendants, for its Answer and Affirmative Defenses to Counts I and II of the plaintiff's Second Amended Complaint states as follows:

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C.§ 1001 et seq. ("ERISA") to accomplish the following:

   (a) recover both short-term and long-term disability benefits due the plaintiff under a Blue Cross Blue Shield of Massachusetts, Inc., employee benefit Plan for the employees of Blue Cross Blue Shield of Massachusetts, Inc.;

   (b) redress breaches of fiduciary duties under ERISA;

   (c) recover statutory penalties caused by the defendants' failure to provide full disclosure as requested and as required by ERISA;

   (d) seek a preliminary injunction ordering and requiring the defendants to forthwith pay to the plaintiff her short-term disability benefits from March 27, 2003 through July 1, 2003, at 100% of usual salary; and

    (e)    pay to the plaintiff her long-term disability benefits at 60% of usual salary from July 2, 2003 to the present, and for as long as the within litigation is pending, and for as long as the plaintiff remains totally disabled from working or until she attains age 65 years whichever shall first occur;

    (f)    recover costs of the within litigation, including attorney's fees and expenses as provided by ERISA;

    (g)    recover prejudgment interest on the unpaid disability benefits due the plaintiff at the rate of 12% per annum in accordance with the Radford Trust (D. Mass.) decision of Young, J., dated June 15, 2004;

    (h)    apply the "de novo," standard of review as opposed to the "arbitrary and capricious" standard;

    (i)    award plaintiff damages and sanctions against the defendants jointly and severally for the violation of "HIPAA," i.e. Health Insurance Portability and Accountability Act of 1996, Pub. L. 104-191, 110 Stat. 1936 or the Gramm-Leach-Bliley Act ("GBL"), Pub. L.106-102, 1338 et seq. a/k/a Kennedy-Kasselbaum Act, as amended April-October, 2003; and

    (j)    grant the plaintiff a Trial by Jury as to all of the foregoing, to the extent permitted by law under the conflicted circumstances.

**ANSWER:** The Plan admits the plaintiff seeks various remedies in her Second Amended Complaint, and denies that the plaintiff is entitled to these or any other remedies.

## JURISDICTION AND VENUE

2. This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA, 29 U.S.C. §1132(a), (e)(1) and (f). This court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 28 U.SD.C § 1331. Under section 502(f) of ERISA, 29 U.S.C. § 1132(f), the court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

**ANSWER:** The Plan admits the allegations of paragraph 2, but denies the plaintiff has stated a claim upon which relief may be granted.

3. Venue is properly in this district pursuant to section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the subject employee benefit Plan is administered in this district, the

breaches of duty herein alleged occurred in this district, and one or more of the defendants resides or is located in this district, and pursuant to 28 U.S.C. § 1391(b), in that the causes of action arose in this district.

**ANSWER:** The Plan admits the allegations of paragraph 3, except it denies that any breaches of duties were committed by the Plan or any other defendant.

## PARTIES

4. The plaintiff is JoAnne M. Royer (hereinafter called "plaintiff Royer") who resides at 76 Joseph Road, Braintree, county of Norfolk Commonwealth of Massachusetts, 02184 is a 53 year old woman and was a valued employee of the defendant Blue Cross Blue Shield of Massachusetts, Inc. for 18 years from June 19, 1985 up until she became too sick to work shortly prior to and following her second but unsuccessful back surgery, as a result of which she was fired from her position of 18 years by the defendant BCBS, effective on or about September 29, 2003. Notwithstanding her discharge, she remains entitled to recover the remaining short-term disability benefits balance due but unpaid to her in the gross sum of $663.80 per week from March 27, 2003 up to July 1, 2003; as well as her long-term disability benefits in the gross sum of $1,653.00 per month from July 2, 2003 up to and including the present and for as long as she remains totally disabled until she attains age 65 years, or is no longer disabled, whichever shall first occur; and restoration of her life insurance and dental insurance.

**ANSWER:** The Plan admits that the plaintiff was employed by Blue Cross Blue Shield of Massachusetts ("BCBS"), denies that she is entitled to any of the benefits alleged, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4.

5. The defendant Blue Cross and Blue Shield of Massachusetts, Inc. (hereinafter referred to as the "defendant BCBS,") is and was the employer of the plaintiff, Royer, and at all times relevant hereto has and has had an usual place of business in the Commonwealth of Massachusetts at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02170 and at the Landmark Office Center, 401 Park Dr., Boston, MA 02215. The defendant BCBS, is, was and remains responsible to pay to the plaintiff Royer, her short-term disability benefits as a result of her total disability after the first 11 days absence from work by reason of damage to her spine which required her to undergo her second back surgery and resulted in frequent and severe burning sensations and painful spasms in the back, hips and legs along with weakness and numbness. These resulted in substantially reduced and limited mobility

as well as inability to remain seated for any period of activity without severe exacerbation of pain all of which, in combination with the side effects of pain medication, renders her totally disabled from any and all work activity.

**ANSWER:** The Plan admits that BCBS employed the plaintiff, upon information and belief admits the allegations concerning BCBS's addresses, and denies the remaining allegations of paragraph 5.

6. The defendant Blue Cross Blue Shield Long-Term Disability Plan a/k/a The Omnibus Welfare Benefits Plan, (hereinafter referred to as the "Plan") also has an usual place of business at Commonwealth of Massachusetts at 100 Hancock Street, Quincy, County of Norfolk, Commonwealth of Massachusetts 02170 and also at the Landmark Office Center, 401 Park St., Boston, MA 02115. Both the defendant, Blue Cross and Blue Shield, the employer, and the defendant Plan are conflicted defendants inasmuch as the Employer is required to pay short-term disability benefits from its own assets and the Plan is required to pay the first $35,000 of long-term disability benefits from its own assets, as a result of which the plaintiff is entitled to a de novo review and a trial by jury on the merits.

**ANSWER:** The Plan denies the allegations of paragraph 6.

7. The defendant, Kemper National Services, Inc., (hereinafter referred to as the "defendant Kemper") is and at all times relevant hereto was jointly and severally participating with the conflicted defendants BCBS, the Employer and the Plan in the determination of entitlement to benefits as a direct servant and/or agent of these defendants. This defendant Kemper has had, and at all relevant times hereto has maintained an usual place of business as Kemper Services, at Blue Cross Blue Shield of Mass Claims Unit, P.O. Box 189151, Plantation, FL 33318-9151, 1-(866)-439-6584, also known as 1601 SW 80th Terrace, Plantation, county of Broward, State of Florida 33318. Further, this defendant services clients including the defendant BCBS Employer and Plan, nationwide. This defendant, jointly and severally, was a key participant in the wrongful denial of disability benefits to which the plaintiff Royer was entitled and also in the process, did violate the HIPAA Act to the detriment and prejudicial damage of the plaintiff, Royer.

**ANSWER:** The Plan admits that Kemper National Services ("KNS") had authority to determine a Plan participant's entitlement to disability benefits, that it was located in Plantation, Florida and serviced clients including BCBS nationwide, and denies the remaining allegations of paragraph 7.

8. Defendant, Broadspire Services, Inc., (hereinafter referred to as the "defendant Broadspire,") working jointly and severally with the defendants, also services its clients nationwide and also is, and was jointly and severally participating with the defendants Kemper and BCBS Employer and the Plan in the determination of entitlement to benefits as a direct servant and/or agent of the defendants BCBS Employer and Plan. This defendant also maintains its offices at the same address as the defendants, Kemper and BCBS Employer and the Plan's claims unit at 1601 SW 80th Terrace, Plantation, County of Broward, State of Florida 33324-4036. This defendant did also violate the HIPAA Act in the process of the wrongful denial of the plaintiff Royer's claim for disability benefits.

**ANSWER:** The Plan admits that Broadspire Services ("Broadspire") had authority to determine a Plan participant's entitlement to disability benefits, that is located in Plantation, Florida and serviced clients including BCBS nationwide, and denies the remaining allegations of paragraph 8.

9. The defendant Sheldon B. Myerson, MD (hereinafter referred to as the "defendant Myerson,") at all times relevant hereto as an usual address at 590 E. 25th Street, Hialeah, FL 33013-3841, (305) 696-2824, and is and was a physician who was a non-examining physician engaged by the conflicted defendants to determine the plaintiff Royer's entitlement to future disability benefits on and after the last payment of short-term disability benefits was made on or about March 22, 2003.

**ANSWER:** The Plan admits that Dr. Myerson was a physician hired by KNS and Broadspire to review medical files and render opinions regarding those files, and denies the remaining allegations of paragraph 9.

## FACTS

10. As indicated, the plaintiff Royer is a 53 year old woman who had been an 18 year employee of the defendant, Blue Cross Blue Shield, having received exemplary reviews and work ethics, generally exceeding goals set for her by those reviewing her performance. She had an excellent work history during those 18 years, working the 6:00 A.M. to 2:00 P.M. shift Monday through Friday. She was extremely active in her position as a claims processor for the defendant Blue Cross, and was one of the most well-liked, well-informed, articulate and personable staff members working for that defendant. She was always very helpful to her

colleagues, acted as their team leader in teaching and advising them, and when healthy and working, was well-liked and well-respected by not only the defendant Blue Cross and staff, but by the subscribers who relied upon the defendant, Blue Cross for their health insurance care and coverage.

**ANSWER:** The Plan lacks knowledge or information sufficient to form a belief as to the truth to the allegations of paragraph 10.

11. The plaintiff's position was officially described as "sedentary," and was anything but. The position she held which earned her exemplary reviews required her to constantly: (a) sit at a computer, (b) stand up, (c) walk to the filing cabinets, (d) open drawers, both high and low, (e) bend, (f) kneel, (g) carry files, (h) lift files and then (i) go to another section of the office where she would retrieve additional materials, and (j) then return again to her desk to her computer to repeat the ongoing process constantly for an 8 hour day with the exception of a one-half hour lunch break.

**ANSWER:** The Plan admits that the plaintiff's job position was sedentary, and denies any remaining allegations of paragraph 11 to the extent they are inconsistent with the job description utilized in the claims review process.

12. From the time she began work at the defendant, Blue Cross she had always performed in an outstanding, professional and highly regarded manner. She was very knowledgeable about the internal rules, regulations and procedures and had assisted others, even those in positions superior to hers, including her immediate supervisors, especially in resolving the more complex issues.

**ANSWER:** The Plan lacks knowledge or information sufficient to form a belief as to the truth to the allegations of paragraph 12.

13. In or about the latter part of September, 2002 to October, 2002, a back problem previously and successfully surgically corrected years earlier, flared anew causing her pain and this substantially limited her mobility and agility. She was no longer able to perform her work the way she had before. She even had difficulty responding and moving about during the defendant Blue Cross' fire drills.

**ANSWER:** The Plan admits the allegations of paragraph 13 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 13.

14. The plaintiff Royer began to see Michael V. DiTullio, MD of South Weymouth, MA, affiliated with the South Shore Hospital in Weymouth which was near the plaintiff's home in Braintree, MA.

**ANSWER:** The Plan admits the allegations of paragraph 14 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 14.

15. The plaintiff struggled to continue working but was unable to do so, and as a result, her last day of work was on December 31, 2002.

**ANSWER:** The Plan admits the allegations of paragraph 15 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 15.

16. Surgery by Dr. Ditullio was scheduled for and took place on January 13, 2003. Unfortunately, this second and subsequent surgery was unsuccessful and the plaintiff experienced pain, numbness, weakness and limitation of motion far more severe than before this the second of her two surgeries.

**ANSWER:** The Plan admits the allegations of paragraph 16 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 16.

17. Based upon the increasingly severe symptoms of pain, weakness, numbness and limitation of motion following her second but unsuccessful surgery on January 13, 2003, and its resulting complications, the defendant Blue Cross approved the plaintiff for 11 days vacation pay followed by short-term disability benefits from January 13, 2003 through March 22, 2003 for a

period of 10 weeks and then wrongfully denied her any short-term disability benefits thereafter inasmuch as the defendant's physicians of choice, not orthopedic surgeons or specialists, i.e., the distant defendant Dr. Meyerson, and another distant Dr. Vaugh D. Cohan, both of Florida, could not find from their distant offices in Florida, any "objective medical evidence," to warrant her pain, pain spasms, numbness, tingling sensations, weakness in her limbs and overall lack of mobility.

**ANSWER:** Upon information and belief, the Plan admits that the plaintiff received eleven (11) days vacation pay and admits the plaintiff was approved for short-term disability benefits from January 13 through March 22, 2003, and denies the remaining allegations of paragraph 17.

18. The defendant Meyerson based his decision initially upon having a nurse from the office of Dr. Ditullio verbally read the doctor's office notes over the telephone to him. Dr. Meyerson would not or could not wait until he conferred with the plaintiff's surgeon before telling the other defendants that he could not justify continuation of the plaintiff's short-term disability benefits, for lack of "objective medical evidence."

**ANSWER:** The Plan denies the allegations of paragraph 18.

19. Once the plaintiff's short-term disability benefits were discontinued, they were never reinstated. That too became the basis for the subsequent denial of her long-term disability benefits.

**ANSWER:** The Plan admits that the plaintiff's STD benefits were never reinstated, and denies the remaining allegations of paragraph 19.

20. The plaintiff's surgeon, Dr. Ditullio, referred the plaintiff to a second orthopedic surgeon, Eric J. Woodard, MD, Chief of Orthopedic/Spinal surgery at Brigham and Women's Hospital who advised the plaintiff, after examining and testing her, that it was most unlikely that the plaintiff would ever be able to return to work.

**ANSWER:** The Plan admits the allegations of paragraph 20 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 20.

21. When so advised, the plaintiff buried her face in her hands and sobbed uncontrollably. She loved working and she loved her job.

**ANSWER:** The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21.

22. Every treating and examining physician and health-care provider has advised the plaintiff that she should not expect to return to work given the severity of her condition.

**ANSWER:** The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 22.

23. *The plaintiff's surgeon, Dr. Ditullio, with the consent of the plaintiff, offered the defendant Blue Cross the opportunity to have a* local *IME of its own choosing and at its own expense, examine and evaluate the plaintiff to review and determine the plaintiff's inability to work. However, the defendant, Blue Cross and Blue Shield, Employer and Plan, declined that offer and their (preferred) determination not to pay the plaintiff her disability benefits, remained in full force and effect, along with the plaintiff's discharge as an employee and loss of her life insurance and dental insurance. [sic]*

**ANSWER:** The Plan admits the allegations of paragraph 23 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 23.

24. The plaintiff underwent an in-depth functional capacity evaluation personally performed by Paul R. Blatchford, Ed.M., a nationally renowned vocational expert. After several hours of substantial testing, to the extent and manner barely tolerable to the plaintiff, he determined the plaintiff to be totally disabled from returning to her position at the defendant Blue

Cross and also rendered his opinion under oath that she would be unable to return to, engage in, and maintain any substantial gainful employment activity.

**ANSWER:** The Plan admits the allegations of paragraph 24 only to the extent that they are consistent with the information in the Administrative Record, lacks knowledge or information to form a belief as to the truth of whether Mr. Blatchford is nationally renowned, and denies the remaining allegations of paragraph 24.

25. The plaintiff had applied for Social Security Disability Benefits, i.e., Title II, SSDI. Without the need for a hearing and solely on the record, based upon all the documentation before him, the United States Administrative Law Judge determined that the plaintiff was totally and permanently disabled and awarded to her, Title II Social Security Disability Benefits with an onset date of January 2, 2003.

**ANSWER:** The Plan admits that the plaintiff applied for and received Social Security Disability Benefits effective January 2, 2003, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 25.

26. Both the Fully Favorable Decision of the United States Administrative Law Judge and the detailed 11 plus page report of the nationally renowned vocational expert, Paul R. Blatchford, Ed.M. had been provided to the defendant Broadspire, timely and prior to its last and final internal denial of the plaintiff's disability benefits.

**ANSWER:** The Plan admits the allegations of paragraph 26, except that it lacks knowledge or information sufficient to form a belief as to the truth of whether Mr. Blatchford is nationally renowned.

27. The plaintiff has participated in, and attempted numerous treatments and therapies, i.e., nerve blocks, injections and many others in an attempt to alleviate her constant and severe pain, all to no avail.

**ANSWER:** The Plan admits the allegations of paragraph 27 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 27.

28.   In addition, the plaintiff now generally requires the use of a cane when leaving home and also has qualified for a handicapped placard from the Commonwealth of Massachusetts' Registry of Motor Vehicles.

**ANSWER:** The Plan lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 28.

29.   In the early stages of her disability, the plaintiff provided a written limited authorization for the defendants to obtain her *written* (emphasis added) medical information with the provision that whatever they did obtain, they would immediately and simultaneously send a photocopy of same to her and to her undersigned counsel of record.

**ANSWER:** The Plan admits the allegations of paragraph 29 only to the extent that they are consistent with the information in the Administrative Record, and denies the remaining allegations of paragraph 29.

30.   The defendants, in denying the plaintiff's short-term disability benefits from March 22, 2003 through July 1, 2003, by ignoring the clearly articulated limitations of the written authorization provided, jointly and severally, did willfully and wrongfully use information acquired in violation of said limited authorization form and in so doing did jointly and severally violate HIPAA and should be held accountable and jointly and severally subject to and liable for sanctions, fines and damages provided by HIPAA and for related sanctions to be awarded by this court.

**ANSWER:** The Plan denies the allegations of paragraph 30.

31.   Further, on April 15, 2003 the plaintiff by counsel made written demand by Certified Mail Return Receipt Requested requiring the defendants to produce documents required by 29 USC §1132 et seq. To date, not all of the documents requested and to which the plaintiff is and was entitled were produced, despite subsequent formal follow-up, written demands.

**ANSWER:** The Plan denies the allegations of paragraph 31.

32. To the best of her knowledge, the plaintiff has exhausted and fully satisfied all internal and administrative remedies available to her for all of the relief sought by this action.

**ANSWER:** The Plan admits that the plaintiff has exhausted her administrative remedies under ERISA, and denies the remaining allegations of paragraph 32.

## COUNT ONE

## CLAIM FOR SHORT-TERM DISABILITY BENEFITS

33. Paragraphs 1-32 above are incorporated by reference as if separately set forth herein.

**ANSWER:** The Plan repeats and re-alleges its answers to paragraphs 1-32 as its answer to paragraph 33.

34. From March 22, 2003 through July 1, 2003, the defendants, jointly and severally, did wrongfully, improperly, unreasonably, and arbitrarily and capriciously deny the plaintiff the short-term disability benefits to which she was entitled at the rate of $668.20 per week together with flex dental coverage and flex basic life insurance coverage, all to her great and ongoing damage.

**ANSWER:** The Plan denies the allegations of paragraph 34.

35. The principal sums of short-term disability benefits now overdue and still owing to the plaintiff for her short-term disability coverage from March 22, 2003 to July 1, 2003, is 10 weeks @$668.20 per week for a principal and primary balance now due and owing to the plaintiff in the minimum sum of no less than Six Thousand Six Hundred Eight-Two ($6,682.00) Dollars U.S.

**ANSWER:** The Plan denies the allegations of paragraph 35.

## COUNT TWO

## CLAIM FOR LONG-TERM DISABILITY BENEFITS

36. Paragraphs 1-35 are incorporated by reference as if separately set forth herein.

**ANSWER:** The Plan repeats and re-alleges its answers to paragraphs 1-35 as its answer to paragraph 36.

37. The plaintiff Royer is, has been and remains totally and permanently disabled since January 2, 2003 by reason of her painful back condition and from her second but failed spinal surgery of January 13, 2003 and is and was vested and entitled to long-term disability benefits since the date her entitlement to short-term disability benefits, which would have terminated on July 1, 2003, had they been properly and timely paid in full.

**ANSWER:** The Plan denies the allegations of paragraph 37.

38. The plaintiff Royer is entitled to long-term disability benefits from July 2, 2003 up to the present and for as long as she remains totally disabled up to and including age 65 years, or until she is deceased, whichever shall first occur.

**ANSWER:** The Plan denies the allegations of paragraph 38.

39. The plaintiff Royer's rate of reimbursement of long-term disability benefits is 60% of her last usual monthly income while an active employee of the defendant Blue Cross Blue Shield working no less than 30 hours per week prior to the onset of her total disability. For the plaintiff Royer, this formula results in her being entitled to monthly long-term disability benefits of One Thousand Six Hundred and Fifty-Three ($2,653.00) Dollars per month for 24 months for a present balance as of the June, 2003 date of this Second Amended Complaint in the sum of Thirty-Nine Thousand Six Hundred Seventy-Two ($39,672.00) Dollars U.S. and continuing.

**ANSWER:** The Plan denies the allegations of paragraph 39.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The plaintiff's complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

The denial of the plaintiff's claim for disability benefits is governed by ERISA and cannot be overturned unless the plaintiff establishes that the claims administrator's decision was arbitrary and capricious.

### THIRD AFFIRMATIVE DEFENSE

Any benefits to which the plaintiff may be entitled must be reduced by the amount of Social Security or other income benefits received by the plaintiff.

### FOURTH AFFIRMATIVE DEFENSE

The plaintiff's claim for extra contractual and punitive damages is preempted by ERISA.

### FIFTH AFFIRMATIVE DEFENSE

The plaintiff is not entitled to a jury trial.

### SIXTH AFFIRMATIVE DEFENSE

The plaintiff's claim for breach of covenant of good faith and fair dealing is preempted by ERISA.

WHEREFORE, defendant, Blue Cross Blue Shield Long-Term Disability Benefit Plan, requests that this Court dismiss Count I and II of the plaintiff's complaint with prejudice and award to Blue Cross Blue Shield Long-Term Disability Benefit Plan its costs and attorneys fees in defending this suit pursuant to 29 U.S.C. §1132(g).

Respectfully submitted,

BLUE CROSS BLUE SHIELD LONG-TERM
DISABLITY BENEFIT PLAN

By its attorneys:

DATED: August 4, 2005

Edward S. Rooney, Jr.
BBO No. 426840
ECKERT SEAMANS CHERIN
& MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
(617) 342-6800

OF COUNSEL:

David F. Schmidt
CHITTENDEN, MURDAY & NOVOTNY LLC
303 West Madison Street, Suite 1400
Chicago, IL 60606
312-281-3600

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by overnight mail this 4th day of August, 2005.

Edward S. Rooney, Jr.